## DR. PEPPER BOTTLING CO. et al. v. RAINBOLDT.

### No. 1397.

Court of Civil Appeals of Texas. Waco.
Oct. 5, 1933.

Rehearing Denied Dec. 14, 1933.

Jos. W. Hale and George Clark, both of Waco, E. C. Gaines, of Austin, and S. M. Leftwich, of Dallas, for appellants.

Bryan & Maxwell, of Waco, for appellee.

STANFORD, Justice.

Appellee, I. N. Rainboldt, for himself individually and as next friend for his 6 year old girl, instituted this suit against appellants, Dr. Pepper Bottling Company, a corporation, Henry Schroeder, and F. A. Graham, to recover damages in the sum of $40,000 for personal injuries suffered by his child, Wanda Louise Rainboldt, and $8,700 for doctor, medicine, and hospital bills which appellee, I. N. Rainboldt, alleged he had become obligated to, and had in part paid. For a full statement of the case, see Dr. Pepper Bottling Company et al. v. Rainboldt et al. (Tex. Civ. App.) 40 S.W.(2d) 827.

Under their first proposition, appellants contended that the court should have granted their request for a peremptory instruction upon the ground that the evidence was wholly insufficient to authorize a submission of the case.

The record shows that on the issue of negligence the trial court submitted special issues Nos. 8 to 13, in substance, as follows:

"Do you find from a preponderance of the evidence, if any, (a) that the failure of the driver of the truck to sound his horn as Wanda Louise Rainboldt was approaching the place of the collision from the opposite side of the street, was negligence, as that term has been defined to you herein?

"(b) that such negligence, if any, was a proximate cause of the injuries and damages, if any, to Wanda Louise Rainboldt?

"(c) that the driver of the truck in question, as Wanda Louise Rainboldt entered the street from the opposite side thereof, failed to apply the brakes on his truck?

"(d) that such failure to apply the brakes by said driver, if he did so fail, was negligence?

"(e) that such negligence, if any, was a proximate cause of the injuries and damages, if any, to Wanda Louise Rainboldt?" To all of which the jury answered: "Yes."

Plaintiffs charged negligence as against all three defendants, jointly and severally, on the grounds that, as they were driving south on North Fifth street in the city of Waco in their truck, they saw Wanda Louise Rainboldt as she left the sidewalk, approached the street, and started across the street on the opposite side from that on which they were driving; that defendants were negligent, in that the driver of the truck failed to sound his horn to warn Wanda Louise Rainboldt, and failed to apply his brakes as he approached the place where Wanda Louise Rainboldt was crossing the street; that these acts were negligence, and as a proximate result thereof they ran over Wanda Louise Rainboldt and caused the injuries to her; that Wanda Louise Rainboldt was a child about 6 years of age.

In support of these allegations, the following evidence was introduced:

"Henry Schroeder, one of the defendants, by deposition, testified that as they drove down North 5th street he saw Wanda Louise Rainboldt; that when he first saw her she was on the far side of the street and on the sidewalk with two other little girls; that he further saw her when she jumped off the curb and started across the street; that from the time they saw her until the collision, they never did sound the horn, and that they did not holler as she left the curb, nor till some time after she left the curb. He further says that he was looking towards her from the time she was on the sidewalk until she stepped off the curb.

"Graham, the driver of the car, testified that he saw the child as she was leaving the sidewalk on the opposite side of the street. He later said that she was leaving the curb when he first saw her and that she traveled on a slight angle as she crossed the street. He further testified that he knew she was coming across the street when he first saw her. He further testified that the window was down on his left, and that he

498

did not say anything to her nor blow his horn. Graham says when he saw her step off the curb, they were driving about thirty feet from the point of the collision.

"Killgore, who saw the accident, testified that he was driving along behind the Dr. Pepper truck some seventy-five yards; that he saw the child coming across the street as she approached the east rail of the car track; that he estimated that the child at that time was around seventy-five yards in front of the Dr. Pepper truck; (there was some question in the evidence as to whether he meant seventy-five feet or seventy-five yards). He further testified that the child went out of sight and the truck was between him and the child, then he saw the truck run over the child. He says there was nothing to interfere with his view; that the girl passed in front of the truck. He further testified that all of the truck was muddy except a place on the bumper about twelve inches wide just to the right of the left front wheel, and that this place was clean.

"Mr. Rainboldt testified that Wanda Louise Rainboldt was a fat, chubby child, about 36 inches high and six years old.

"Jay LeFevers, witness for the plaintiffs, testified that he saw her under the truck and exclaimed, 'My God, they are going to run over the little girl.' That about that time the rear wheel of the truck passed over her."

The evidence is undisputed that they did not sound the horn. Appellants have cited only the evidence of Schroeder and Graham on material questions of negligence. They are interested parties and themselves defendants. Killgore's testimony was that of a disinterested person, and the jury had a right to believe him.

The evidence in this case, if it does not show as a matter of law that Schroeder was an employee of Dr. Pepper Bottling Company, certainly is sufficient to submit the issue of master and servant.

■ Jury may disregard testimony of interested witness. Dubinski Elec. Works v. Lang Electric Co. (Tex. Civ. App.) 111 S. W. 169, par. 3; Texas & P. R. Co. v. Taylor, 54 Tex. Civ. App. 419, 118 S. W. 1097, par. 12, affirmed 103 Tex. 367, 126 S. W. 1117, 1200; Hobart Bank v. Fordtran (Tex. Civ. App.) 122 S. W. 413, par. 1; Schumann v. Brownwood Mutual Life Ins. Ass'n (Tex. Com. App.) 286 S. W. 200, pars. 2 and 3; 17 Tex. Jur. p. 893, § 405; G., C. & S. F. R. Co. v. Dunman (Tex. Civ. App.) 15 S.W. (2d) 1053, affirmed (Com. App.) 27 S.W.(2d) 116, pars. 1 and 2, 72 A. L. R. 90.

If there is evidence, case goes to jury. Paris & G. N. Ry. Co. v. Stafford (Tex. Com. App.) 53 S.W.(2d) 1019; McNeel v. T. & N. O. R. Co. (Tex. Civ. App.) 54 S.W.(2d) 571, 573; Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696; 5 Tex. Jur. 699, § 102; Temple Lumber Co. v. Living (Tex. Civ. App.) 289 S. W. 746. The contentions of appellants here are overruled.

■ Under appellant Dr. Pepper Bottling Company's second proposition, they contend that the court should have peremptorily instructed a verdict in this case in favor of Dr. Pepper Company, because the relationship between Dr. Pepper Company and Schroeder at the time of the injury was employer and independent contractor.

F. A. Graham testified that he was driving the truck that was involved in this accident and that he was employed by Henry Schroeder and had been in his employment somewhere around two years. The Dr. Pepper Company knew that Graham was in service and employed by Schroeder. Schroeder said: "Yes Sir, we didn't have any contract. I didn't have a contract—that is, I had no written contract." The truck in question carried the Dr. Pepper sign. Mr. Miller, the manager of Dr. Pepper Bottling Company, testified that the Dr. Pepper Company had the truck painted and that it sometimes furnished Schroeder with a truck. All trucks of defendant company have a large sign painted on them. Mr. Miller further testified that, except for the purpose of selling Dr. Pepper Bottling Company's merchandise, they would not have sent the truck salesman out. Mr. Miller further testified that as sales manager he approved the persons to whom the company would permit credit sales to be made, and, further, that the company fixed the route or designated towns to which the drivers were permitted to go, and, when so fixed, they had no right, without the company's consent, to deviate therefrom. He further testified that Schroeder would not have been permitted to leave the route fixed for him by the company. Schroeder stated: "Well, we have certain routes. We can't run in any direction we want to. We have certain routes that we are supposed to have, Yes Sir." Mr. Schroeder also testified that Dr. Pepper Bottling Company fixed the prices at which they sold, and that they sold the merchandise at the price so fixed, and Dr. Pepper Bottling Company named the towns. Mr. Miller further testified that the truck drivers and salesmen were expected diligently to serve their routes, that they not neglect any town on their routes, and that the company fixed the price at which the merchandise was sold. Mr. Miller further testified that he had the right at any time to discharge a driver whose service was unsatisfactory; that he would do so; that, if he did not go to any particular town, he could discharge him; and that was his authority over the drivers. The trucks were used to haul Dr. Pepper stuff. He further testified that he was manager down there, exercised supervision and control over the drivers, and had the right to hire and fire them, and would do so if their work

was not satisfactory, and that the results he required was to sell the merchandise and make a profit. Miller further testified that helpers were permitted to the drivers. He did refuse to say, however, what he would do in the event Graham should have been an unsatisfactory helper to Schroeder.

On the proposition that Schroeder was an employee and not an independent contractor, see the following authorities: Spears Dairy v. Bohrer (Tex. Civ. App.) 54 S.W.(2d) 872, par. 2; Shannon v. Western Indemnity Co. (Tex. Com. App.) 257 S. W. 522; 23 Tex. Jur. p. 546, § 5; 2 C. J. 434; Tex. Traction Co. v. George (Tex. Civ. App.) 149 S. W. 438; Prairie Oil & Gas v. Wright (Tex. Civ. App.) 238 S. W. 974, 975; Tex. Bldg. Co. v. Reed (Tex. Civ. App.) 169 S. W. 211, par. 5; Dr. Pepper Bottling Co. v. Rainboldt (Tex. Civ. App.) 40 S.W.(2d) 827 (writ dismissed); Wallace v. Cotton Oil Co., 91 Tex. 18, 40 S. W. 399; Patton-Worsham Drug v. Drennon (Tex. Civ. App.) 123 S. W. 705, 707, 708, reversed on other grounds, 104 Tex. 62, 133 S. W. 871; Maryland Casualty Co. v. Kent et al. (Tex. Com. App.) 3 S.W.(2d) 414, par. 2.

On the question of the liability of Dr. Pepper Bottling Company for the acts of Graham, see the following authorities: 39 C. J. p. 37; Prince v. Taylor (Tex. Civ. App.) 171 S. W. 826, par. 2; Smith v. Humphreyville, 47 Tex. Civ. App. 140, 104 S. W. 495, page 496; Wallace v. Cotton Oil Co., 91 Tex. 18, 40 S. W. 399; Campbell v. Trimble, 75 Tex. 270, 12 S. W. 863; Shearman & Redfield (6th Ed.) vol. 1, p. 381, § 157; Dr. Pepper Bottling Co. v. Rainboldt (Tex. Civ. App.) 40 S. W.(2d) 827; Gulf Ref. Co. v. Rogers (Tex. Civ. App.) 57 S. W.(2d) 183, pars. 1–4.

Under appropriate pleadings and evidence, the jury found that Schroeder was in charge of the truck at the time of the accident, and likewise they found that the truck was at the time being driven for the use and benefit of Dr. Pepper Bottling Company, and that Graham was working with Schroeder with the knowledge and consent of Dr. Pepper Bottling Company. These findings established the relation between Dr. Pepper Bottling Company, on the one hand, and Schroeder and Graham, on the other, as employer and employee, or as master and servant. The contention of appellants made here is in all things overruled.

■Special issue No. 23 involves whether or not Schroeder was an independent contractor. As submitted, taken together with the court's definition of independent contractor, it does not constitute a general charge, nor does it submit to the jury a question of law, but same does submit to the jury an ultimate issue of fact. The court submitted to the jury the following special issue No. 23: "Was Henry Schroeder in the operation of the truck at the time and place of the collision an independent contractor?"

As relevant thereto, the court submitted the following definition of independent contractor: "An independent contractor as used herein is any person who in the pursuit of a business or occupation undertakes to do a particular work for other persons, and who has exclusive control of such work in respect to the details of the work to be performed, and over whom the person for whom the work is being done has no right or control as to such details, and who represents the will of the person for whom the work is done only as to the result of his work and not as to the means or methods by which it is accomplished."

On the point that the issue as submitted is not a question of law, see Speer, p. 137, § 103; article 2189, Rev. St.; Quanah, A. & P. Ry. Co. v. Collier (Tex. Com. App.) 215 S. W. 838, par. 1; Connellee v. Nees (Tex. Com. App.) 266 S. W. 502, par. 2; Rick v. Farrell (Tex. Civ. App.) 266 S. W. 522, pars. 9, 10; Weatherford, M. W. & N. Ry. Co. v. Baucom (Tex. Civ. App.) 262 S. W. 823, pars. 1, 2; San Antonio, U. & G. Ry. Co. v. Dawson (Tex. Civ. App.) 201 S. W. 247, par. 4; Moore v. Scott (Tex. Civ. App.) 16 S.W.(2d) 1100, par. 6; Arendale v. Arendale (Tex. Civ. App.) 22 S.W. (2d) 1080, par. 3; Texas Employers' Ins. Ass'n v. Owen (Tex. Com. App.) 298 S. W. 542, pars. 2, 3.

■ That the definition is not a general charge, see Elgin v. Banks (Tex. Civ. App.) 38 S.W.(2d) 149, pars. 2 and 4.

■ Only ultimate facts should be submitted, see Texas City Transportation Co. v. Winters (Tex. Com. App.) 222 S. W. 541, pars. 2, 3, 6, and 7.

■ The term "independent contractor" of course is a legal term, and therefore the court properly instructed the jury what facts they might take into consideration in arriving at their answer to the question, but did not instruct them how to answer it, nor did the court make inquiry of the jury as to the evidentiary details that would go to make up the fact of independent contractor. The term "negligence" is a legal term. The court therefore defines negligence. The jury are asked to determine whether or not certain acts constitute the proximate cause of an injury. This, standing alone, would be a question of law. The court defines "proximate cause," and then it becomes an ultimate issue of fact. The definition or explanation does not become a general charge so long as it is confined to the definition or explanation of the legal term used in an issue involving an ultimate fact. See Speer on Special Issues, p. 139, par. 3; Connellee v. Nees (Tex. Com. App.) 266 S. W. 502. Thus it is in the instant case. The ultimate fact is whether or not Schroeder was an employee or whether he was an independent contractor. These ultimate facts were submitted to the jury in special issues. Together with these issues were submitted ap-

propriate definitions. The contention of appellants here made are overruled.

The defendants having pleaded independent contractor by way of defense as against liability, and plaintiffs having made out a prima facie case of master and servant, the burden was then on defendant to establish the defense of independent contractor.

One of Dr. Pepper Bottling Company's major defenses was that Schroeder was an independent contractor and therefore Dr. Pepper Bottling Company was not liable for the acts of either Schroeder or Graham. A prima facie case of master and servant having been made out by plaintiff and in no way rebutted, same is here in all things approved. 23 Tex. Jur. p. 550, § 8; Burton v. G., H. & S. A. Ry. Co., 61 Tex. 526; Taylor, B. & H. Ry. Co. v. Warner, 88 Tex. 642; 32 S. W. 868, at page 870; Kampmann v. Rothwell (Tex. Civ. App.) 107 S. W. 120, at page 122; Orient Consolidated Pure Ice Co. v. Edmundson (Tex. Civ. App.) 140 S. W. 124 (writ of error dismissed); Prairie Oil & Gas Co. v. Wright (Tex. Civ. App.) 238 S. W. 974.

In the Warner Case, supra, the issues of master and servant and independent contractor arose. Justice Brown, for the court, in passing on the matter similar to the one before us, said: "Every person who is found performing the work of another is presumed to be in the employment of the person whose work is being done, and if the facts be such as to exempt the owner of the property improved, or the person for whom the work is being performed, from liability for the acts of those performing such work, it devolves upon him who claims such exemption to make proof of the terms of the contract, showing that the relation of master and servant did not exist." See cases above cited.

The contentions made in this case by the appellants are hereby overruled.

The issues of agency were in the case by the pleadings and the evidence, and the court did not err in submitting same to the jury. It clearly appears from the evidence, which is partially set out under second and third propositions, that Schroeder was selling merchandise for the defendant Dr. Pepper Bottling Company, that he was hauling merchandise for them, and that he was collecting accounts for them; in other words, that he was transacting business for the Dr. Pepper Bottling Company, and was under the control and supervision of its manager. 2 Tex. Jur. p. 384, § 5; Reed v. Hester (Tex. Com. App.) 44 S. W.(2d) 1107, pars. 7 and 8; Brinker v. First Nat'l Bank (Tex. Com. App.) 37 S.W.(2d) 136, par. 7; Thompson v. Schmitt, 115 Tex. 53, 274 S. W. 554, par. 1; Williams v. O'Daniels, 35 Tex. 542, at page 544. The contentions of appellants here made are overruled.

Appellants having filed their general demurrer in advance of their special exception on misjoinder of parties, they thereby appeared on the merits of the case, and their exception as to misjoinder came too late. Appellants first pleaded a general demurrer, and followed this by special exception, pleading misjoinder. These were, respectively, overruled by the court. Holt v. Farmer (Tex. Com. App.) 56 S.W.(2d) 633, pars. 2 and 3; Fall v. Weber (Tex. Civ. App.) 47 S.W.(2d) 365, pars. 1 and 2; Dr. Pepper Bottling Company v. Rainboldt (Tex. Civ. App.) 40 S.W.(2d) 827; Humble Pipe Line Co. v. Kincaid (Tex. Civ. App.) 19 S.W.(2d) 144, pars. 1 and 2; Becker v. Becker (Tex. Civ. App.) 218 S. W. 542, par. 3.

Appellants seem to think that, because they raised the question of misjoinder by special exception, the rule as to due order of pleading does not apply. They also contend that, because at a former trial such a plea was presented and overruled by the court, and that same was affirmed on appeal, but the case was reversed on other points and after reversal of the case an amendment of plaintiffs' pleading was filed, they may on the second trial again present their plea of misjoinder by exception. Neither of these contentions is correct. When an appearance is made to the merits, it is once for all. And subsequent pleas, whether they are exceptions or not, are subject thereto.

As said in Holt v. Farmer, supra, and approved by the Supreme Court, an appearance by general demurrer is an appearance on the merits of the case, and subsequent dilatory pleas are too late. It is immaterial whether it is by plea or by exception. The statute (Rev. St. 1925, art. 2012) in reference to due order of pleading applies in each instance. The contentions of appellants herein are hereby overruled.

By their twentieth and twenty-first propositions, appellants contend, in substance, that the trial court committed reversible error in submitting the general issue of discovered peril, and the appellants say, since the answers were without any support in the evidence, it was the duty of the court, on request, to set aside such answers of the jury and grant the defendants a new trial. The pleadings and the evidence raise the question of discovered peril, and the court was correct in submitting these issues. Plaintiff alleged the doctrine of discovered peril, and relied thereon as one of its grounds of recovery. The evidence shows: North Fifth Street at the place of the collision was 44 feet wide. Schroeder and Graham both saw the girl on the sidewalk across the street and as she left the curb entering the street. They realized that she was crossing the street. They had good brakes on the truck. They had an emergency brake on the truck. If they were in front of the Rainboldt house, they were

44½ feet from the point of the collision. If they were on the double car track, they were 59½ feet from the point of the collision. Killgore testified that the distance was much farther. They did not turn quickly to the right. They did not use the emergency brake. They did not promptly stop the truck. They failed in all these particulars in addition to the acts of primary negligence set out in the statement under the first counter proposition. Dallas Ry. & Terminal Co. v. Bankston (Tex. Com. App.) 51 S.W.(2d) 304, pars. 6, 7, and 8; Galveston, H. & S. A. R. Co. v. Wagner (Tex. Civ. App.) 291 S. W. 664, pars. 2, 3, 4, and 5; Id. (Tex. Com. App.) 298 S. W. 552, par. 1; Hines v. Foreman (Tex. Com. App.) 243 S. W. 479, par. 10; Wilson v. Southern Traction Co., 111 Tex. 361, 234 S. W. 663. The above contentions of appellants are hereby overruled.

Appellants contend that, if any act or omission on their part or either of them in any wise caused or contributed to cause the injuries herein complained of, then these defendants respectfully show that they were acting at and immediately prior to the time of the collision in question in a sudden emergency which was created, and came about through no fault of their own, and consequently their acts or omissions could not, as a matter of law, constitute negligence; that the acts and circumstances hereinbefore shown created and constituted a sudden emergency of such character as to overpower the judgment of a reasonably prudent and careful driver, and of such character as to momentarily render a person of ordinary care and prudence incapable of deliberate action. The record shows that the question here involved was submitted in special issue No. 61, as follows: "Do you find from a preponderance of the evidence, if any, that under all the facts and circumstances in evidence before you, the operator of the truck in question was not at the time of the collision acting under an emergency? You will answer 'it was not an emergency' or 'it was an emergency' as you may find from the evidence." To this instruction the jury answered, "It was not an emergency."

The court also defined an emergency as follows: "In connection with the above issue, you are instructed that the word 'emergency' as used herein means a condition arising suddenly and unexpectedly and not approximately caused by the negligent act or acts of such operator and which called for immediate action on his part, without time for deliberation."

The court also submitted special issue No. 70, as follows: "Do you find that the mind of F. A. Graham was seized with momentary fright and terror when he first discovered Wanda Louise Rainboldt attempting to cross North Fifth Street just prior to the collision in question?" To which the jury answered, "No."

It will thus be seen that there was no emergency, and the jury so found. The contentions of appellants as shown above are hereby overruled.

Appellants present numerous contentions to the effect that appellee's counsel often indulged in improper argument while addressing the jury, and that such improper argument constituted reversible error. We have examined all of the alleged improper argument on the part of appellee's counsel and have concluded that same shows no reversible error. This contention on the part of appellants is overruled.

The issues as to damages in this case were properly submitted by the court, and the amounts awarded are supported by the evidence. Houston Elec. Co. v. Seegar, 54 Tex. Civ. App. 255, 117 S. W. 900, syl. 1 (writ of error dismissed); Gulf, C. & S. F. R. Co. v. Glenk, 9 Tex. Civ. App. 599, 30 S. W. 278, 279, (writ of error dismissed); Berwald v. Turner (Tex. Civ. App.) 52 S.W.(2d) 112, syl. 3 (writ of error dismissed); 13 Tex. Jur. p. 176, § 84; 13 Tex. Jur. p. 261, § 148 et seq.

 Appellants claim that a double recovery was permitted, in that physical pain and anguish are involved in bodily impairment. This is incorrect. Bodily impairment, as charged by the court, is the loss or injury of a member. There is of course incidental pain and suffering connected therewith, but it is separate therefrom. To illustrate, a man might lose his leg; that would be a bodily impairment. In connection with the loss of the leg, he might suffer at the same time pain and anguish. The wound might heal and the pain and anguish disappear, but the bodily impairment, to wit, the loss of the leg, would remain. The evidence supports the element of bodily impairment. Her bladder is permanently injured. She will not be able to bear children. Her injuries are permanent. As to the reasonableness of the amount of the damages awarded to Wanda Louise Rainboldt, this was a question for the jury. It would be burdensome to recite all the evidence, but we unhesitatingly say that no more terrific injury could come to a young girl, without death, than that suffered by Wanda Louise Rainboldt. The judgment is large, being $40,000 for Wanda Louise Rainboldt, but it must be remembered that this child has suffered pain and anguish that are indescribable and that, her injury being permanent, she will doubtless suffer all of her life.

 The burden of proof on the issue of contributory negligence on the part of Wanda Louise Rainboldt was on the defendant. In connection therewith the jury were correctly instructed as to what would constitute negligence on her part. The definition

502

was as follows: " 'Negligence,' as applied to a minor child, as used herein, is the doing of that which an ordinarily prudent person of the age, intelligence, experience and capacity of such child, would not do under the same or similar circumstances, or the failure to do that which an ordinarily prudent person of the age, intelligence, experience and capacity of such child, would do under the same or similar circumstances."

On the matter of negligence of a minor child, see Galveston H. & S. A. R. Co. v. Henry (Tex. Civ. App.) 252 S. W. 210, syl. 17; Ft. Worth & Denver C. Ry. Co. v. Wininger (Tex. Civ. App.) 151 S. W. 586, syl. 4 to 6 (writ of error dismissed); G. H. & H. R. Co. v. Moore, 59 Tex. 64, 66, 46 Am. Rep. 265; Texas & P. Ry. Co. v. Hall, 83 Tex. 675, 19 S. W. 121, syl. 6; Houston, E. & W. T. R. Co. v. Adams, 44 Tex. Civ. App. 288, 98 S. W. 222; 5 Texas Jur., p. 699, § 102; Temple Lumber Co. v. Living (Tex. Civ. App.) 289 S. W. 746 (writ of error dismissed).

We have considered all of appellants' assignments, and, finding no reversible error, this case is hereby in all things affirmed.