## ANDING v. QUEENER.

### No. 5529.

Court of Civil Appeals of Texas.

Texarkana.

March 14, 1940.

Rehearing Denied March 21, 1940.

McGee & Head, of Kilgore, Stinchcomb, Kenley & Sharp, of Longview, and Darden, Burleson & Wilson, of Waco, for appellant.

Jones & Jones, of Marshall, and Mann & Gossett, of Wichita Falls, for appellee.

WILLIAMS, Justice.

Harriet Jane Queener, between six and seven years of age, by Next Friend, brought this suit against A. F. Anding, herein referred to as defendant, to recover damages for injuries alleged to have been sustained as the result of an automobile accident which occurred on Main street within the corporate limits of Kilgore during the noon hour. In amended petition, upon which the case was tried, she alleged that while crossing Main street she was run into by an automobile belonging to defendant and being driven by Bailey Jones, a servant and employee, while acting in the course of his employment. Various alleged acts of negligence were pleaded, which included a charge that this driver operated the car at a greater speed than twenty miles per hour within the corporate limits of Kilgore in violation of the penal laws of the state. She further pleaded that if she be mistaken in her allegation that such alleged speed was in violation of the penal law, then, in the alternative, said speed constituted actual negligence. Defendant answered with a general demurrer and denial. He pleaded various acts of plaintiff constituted contributory negligence, and further pleaded that the driver of his car was acting under an emergency at and prior to the time of the accident not proximately caused by any negligent act of his driver, who exercised ordinary care while acting under such emergency. In a supplemental petition plaintiff pleaded that on account of her age she could not be charged with contributory negligence; specially denied that the driver of the car was acting under an emergency; and if there was an emergency, the driver failed to exercise ordinary care in such emergency.

Harriet, going in a northerly direction, was crossing Main street at or near a point where the same intersected Broadway. As she reached the center, or a foot or two north of the center of Main, defendant's car, traveling east on Main, struck her. The right front side of the car hit her. Approaching this intersection from the west, there were situated on the north side of Main street an electric shop, a space of about twenty feet, then the Star Grocery, another space of perhaps twenty feet, and then the Palace Grocery on the corner west of the intersection. There were parking spaces off the pavement between and in front of these buildings. Several trucks and automobiles were parked along or around the stores. Some placed all the vehicles off the pavement. Other witnesses placed some of the vehicles parked on the pavement parallel to the curb. Main street was thirty feet wide. Broadway was under repair and closed to vehicular traffic. According to plaintiff's witness Watson, he first observed in his rear-view mirror defendant's car approaching, probably 150 feet back; Watson proceeded thirty or forty feet when defendant's car pulled to the north to the center of the street and passed him as he was proceeding to turn off to the south to park between the electric shop and Star Grocery. Harriet emerged from the south into the street either from between or around some parked vehicle. Some said she was walking, others that she ran into the street. Witnesses estimated the speed of defendant's car at and just prior to the accident at thirty-five miles, slow, fifteen miles, and fifteen to twenty miles, and skid marks at fourteen or sixteen inches, ten feet and twelve feet. Harriet was within eight or ten feet of defendant's car when various witnesses observed her. The car proceeded some ten feet to the north curb after striking Harriet and came to a stop at an angle near the north curb.

We deem the foregoing brief picture sufficient for an understanding of the propositions discussed.

Plaintiff moved for judgment and subject thereto for a mistrial on account of irreconcilable conflict in the jury's findings. From a judgment in favor of plaintiff and

the refusal of the court to grant defendant's motion to set aside the verdict and grant a new trial, defendant has perfected his appeal.

In response to Special Issues Nos. 4, 5 and 6, the jury found that the driver of the automobile on the occasion in question failed to keep a proper lookout as he approached the juncture of Main and Broadway; such failure was negligence; and this was a proximate cause of the injuries. The driver was exonerated on other alleged acts of negligence, except that of speed, to be observed later. The jury answered Issue No. 12, "It was not an unavoidable accident." The jury found that Harriet failed to look to her left before attempting to cross the street; failed to keep a proper lookout at the time; attempted to run across the street; and that she ran into the path of the car. They found that neither of these acts constituted negligence on her part. To Special Issues Nos. 31 and 32, the jury found that at the time of the accident, the driver was acting under an emergency not proximately caused by any negligence on his part, and used ordinary care after the emergency arose.

Under several propositions defendant asserts that the jury's findings in response to issues on emergency were in direct, irreconcilable conflict with the findings on failure to keep a lookout and on unavoidable accident. Special Issue No. 31 reads: "Do you find from a preponderance of the evidence, if any, that Bailey Jones was, at the time of the accident in question, acting under an emergency?"

The court defined an emergency as follows: "In connection with the above issue, you are instructed that the word 'emergency' as used herein, means a condition arising suddenly and unexpectedly, and not proximately caused by the negligent act or acts of Bailey Jones, and which called for immediate action on his part without time for deliberation."

Such an issue with its definition was submitted in Dr. Pepper Bottling Co. v. Rainboldt, Tex.Civ.App., 66 S.W.2d 496, 497, 501; Schroeder v. Rainbolt, 128 Tex. 269, 97 S.W.2d 679, 684, and received the tacit approval of both courts. The jury answered "Yes" to No. 32, reading: "Do you find from a preponderance of the evidence, if any, that after the emergency, if any arose, Bailey Jones did what an ordinarily prudent person would have done under the same or similar circumstances?"

■ It is to be observed that the jury found the failure of the driver to keep a proper lookout as he approached the juncture of the two streets was negligence and a proximate cause of the injury. The jury also found that the emergency arose through no act of negligence of the driver and was not proximately caused by any negligent act of his. The former would form a basis of recovery, the latter would lead to its denial. 30 T. J. 691; 45 C.J. 713. This presents an irreconcilable conflict on controlling issues. The finding on unavoidable accident is also in conflict with the findings on Nos. 31 and 32. As stated in Speer's Issues (1932 Ed.) Sec. 431, p. 560: "There is no rule of priority, indeed there is no priority, in the degree of importance to be attached to any particular finding. So that, where the findings with respect to a definite fact material to the judgment are such that both cannot be true and therefore cannot stand at the same time, there is a fatal conflict." Stiles v. Union Terminal Co., Tex.Civ.App., 1 S.W.2d 947, 949.

In response to Special Issues Nos. 1 and 2, the jury found that the automobile was being operated at a rate of speed in excess of twenty miles per hour on the occasion of the injuries, but this was not negligence. The jury was instructed that if they answered No. 1 "Yes," to answer No. 3. To this they answered that the speed in excess of twenty miles an hour was a proximate cause. We need not determine if the findings on speed can form a basis for the judgment entered. If the answer to No. 3 be given effect on the theory of common-law negligence, the observations above made on a conflict with emergency would likewise be applicable.

We pretermit a discussion of the other propositions advanced. Because of the irreconcilable conflict in the jury's findings, the judgment is reversed and the cause remanded.