### HICKS et ux. v. FROST.

No. 4453.

Court of Civil Appeals of Texas. El Paso.

March 7, 1946.

Rehearing Denied March 28, 1946.

Lawrence L. Bruhl, of Llano, Herman A. Usener, of Fredericksburg, and Morriss & Morriss, of San Antonio, for appellants.

Arthur Stehling, of Fredericksburg, and Birkhead, Beckmann, Stanard & Vance, of San Antonio, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the district court of Gillespie County, in a case wherein P. C. Hicks and wife were plaintiffs and Cheslyan H. Frost was defendant. Plaintiffs sought recovery of damages alleged to have been negligently inflicted upon them in a collision between an automobile driven by Hicks and one driven by John W. Ross, an employee of defendant Frost. The trial was before the court with a jury. On the verdict returned judgment was rendered in favor

of the defendant, Frost. Plaintiffs perfected this appeal to the San Antonio Court of Civil Appeals and the Supreme Court transferred the appeal to this Court. Plaintiff P. C. Hicks will be herein designated as "Hicks" and defendant's employee John W. Ross as "Ross."

There is no question of the sufficiency of the pleadings except as to one issue. A brief recital of the undisputed facts, together with a reproduction of a part of the verdict will clarify the issues.

The collision between the two motor vehicles occurred on U. S. Highway No. 87 at a point about ten and one-half miles north of the city of Fredericksburg, such point of collision being also about 200 feet south of a culvert crossing said highway. The highway runs north and south; the paved portion is twenty feet in width with a gravelled shoulder on either side. The collision took place on June 28, 1944, in the late afternoon or early evening. It was broad daylight at the time and the highway was dry.

Ross was driving south along the highway in a Chevrolet club coupe; Hicks and his wife were driving north in a four door Mercury sedan, to which was attached a trailer. The collision was at the point aforesaid. Marks on the pavement indicated, or at least there was evidence to that effect, that at the moment of the impact a part of Hicks' car was west of the center line of the pavement.

Hicks and his wife in the collision each suffered severe personal injuries, as did Ross, defendant's employee. Each car was badly wrecked and damaged.

The jury found that in approaching the point of the collision and just prior thereto Ross was driving on his left side of the center of the highway; that same was negligence and a proximate cause of the collision; that Ross failed to keep a proper lookout and this was a proximate cause of the collision; that just prior to the collision Ross was driving in excess of sixty miles per hour and this was a proximate cause of the collision; that Ross, just prior to the collision, was driving at a reckless and dangerous rate of speed and this was a proximate cause of the col-

lision; that just prior to the collision Ross failed to have his car under proper control and this was likewise a proximate cause of the collision; that they did not find Ross at the time of the collision was under the influence of intoxicating liquor; that the collision was not an unavoidable accident. The verdict on the special defensive issues pleaded by defendant was substantially as follows:

Just prior to the collision plaintiff Hicks turned his automobile to his left so as to cause same wholly or partially to go over to his left hand side of the road; this was negligence and a proximate cause of the collision; that in failing to turn his automobile to the right after observing the approach of Ross Hicks was guilty of negligence and same was a proximate cause of the collision; that Hicks failed to have his car under proper control and this was a proximate cause of the collision; that at the time or just prior to the collision Hicks was driving his automobile and trailer at a speed in excess of 45 miles per hour and same was a proximate cause of the collision; that just prior to the collision Hicks was not driving at a reckless and dangerous rate of speed. The verdict likewise assessed the damages for the personal injuries suffered by Hicks at $9,500, and his damages for personal injuries to his wife at the sum of $12,500. On the issue as to damages to the respective cars it was found that none was suffered.

It is urged by plaintiffs that each finding against them is without evidence to sustain same. In the alternative that each of such findings is against the preponderance of the evidence. Error is charged in excusing defendant's employee Ross, a witness in the case, from the rule. Complaint is made as to the admission and exclusion of evidence, and as to the refusal of special issues and explanatory charges; misconduct of the jury is also assigned as error.

■ No doubt is entertained but some at least of the findings on material issues of contributory negligence have some support in the evidence. In our opinion it was not error for the court to refuse to enter judgment non obstante veredicto for plaintiffs. Our reason for so holding will,

we think, sufficiently appear in a discussion of the assignments asserting that such findings are against the preponderance of the evidence. Even though in a sense part of the plaintiff's acts were in a situation of emergency, it is not undisputed that his own negligent acts or omissions did not aid in bringing about such situation.

■ Before proceeding with discussion of the evidence it might be well to determine the effect of the finding of the jury that Hicks operated the automobile at a speed in excess of 45 miles per hour. The plaintiffs assert that this does not necessarily convict Hicks of negligence. The theory is that Article 827-a, Vernon's Annotated Penal Code, as amended in 1941, does not apply to a trailer such as was attached to plaintiffs' car. Section 1 of such Act defines trailer as follows:

"Every vehicle without motive power designed or used for carrying property or passengers wholly on its own structure and to be drawn by a motor vehicle."

There can be but one conclusion. If Hicks was operating his automobile in excess of 45 miles per hour such speed was a violation of the statute. The trailer attached to his automobile was 4 x 6 and ran on two wheels.

■ Viewing the circumstances surrounding this collision as a whole it could not happen without negligence of one or the other drivers, or of both. It was broad daylight, the road practically straight, with a twenty foot pavement augmented by gravel shoulders on either side. There was nothing to prevent either driver from seeing the other car when the two cars approached within a distance of a thousand or fifteen hundred feet of each other. The road was dry and there was nothing to interfere with the management of either car. So far as the evidence goes the brakes and steering gear were properly functioning on each car. Although submitted, and found in favor of plaintiffs, the issue of unavoidable accident in our opinion was not in the case.

Hicks testified that he first saw the car approaching as it passed a cattle truck, at which time it was of course on its left hand side of the road; that the car as it approached wove back and forth from the east to the west portion of the pavement; that at one time it was on the east shoulder. He said that he did not turn farther to his right because he thought the approaching car, which he estimated was travelling at a rate of speed between seventy-five and eighty miles per hour might go into the ditch on the east side of the highway, that as the car approached he slowed his car down and turned slightly to his left just before the impact of the two cars; that at the time of the impact he had practically stopped his car. He stated in a deposition that at the time he saw the rapid approach of Ross's car he was driving at between forty-five and fifty miles per hour; on the stand that he was driving between forty and forty-five. In most particulars Hicks' testimony was corroborated by that of his wife.

Ross testified that he pulled to his left because the Hicks car was on the west side, that the car changed its course to the east side of the road and he then guided his car gradually towards the west, that is to his right. He further testified to passing a car parked on the west side of the highway after passing the truck and before the collision. He said he was driving at about 45 or 50 miles per hour and the Hicks car was approaching at that or a greater rate of speed; that he had slackened his speed somewhat before the collision, but did not know whether the Hicks car had slackened its speed. Hicks and his wife and Ross were the only eyewitnesses testifying. Near the place of contact of the two cars was found a whiskey bottle of a capacity of 4/5 of a quart containing a small quantity of whiskey. Ross admitted this came from his car. There was a testimony as to an unopened bottle of beer near the scene of the collision and in proximity to Ross's car. Ross denied there was any beer in his car.

Highway officers arriving after the collision testified as to marks left on the pavement or roadway by each car.

George Anderson, operator of a large truck, testified that he was proceeding south towards Fredericksburg and a short distance out of Brady Ross passed him and

parked on the right or west side of the road, and that he then passed Ross; that a few miles farther south Ross again passed his truck. This witness testified to erratic driving on the part of Ross, and to seeing him with a bottle in each hand and his elbows on the steering wheel. This, we take it, at the time Ross was parked. Mary and Helen Harper, riding in the front seat with the witness Anderson, testified to practically the same thing, save that each of them testified that while driving Ross had a bottle in each hand and was guiding with his elbows.

Tommy Keefe, in the truck which Ross passed shortly before the collision, testified that in his opinion the Ross car was traveling at about sixty-five or seventy miles per hour. His father, in the same truck, estimated the speed of the Ross car at seventy or seventy-five miles per hour. Ross admitted taking one small drink of whiskey in San Angelo about four P.M. the day of the accident; denied taking any other drink of liquor that day.

■ If the findings had acquitted Ross of negligence there would be small question but that same would have been against the preponderance of the evidence. Ross was found guilty of every act of negligence submitted save that of intoxication. The question presented is as to the findings that plaintiff was guilty of several acts of contributory negligence. If Ross was intoxicated it must be inferred from the fact of his rather erratic driving just out of Brady, from the fact that Anderson and the two young ladies said they saw him drinking when he passed them, or as they passed him, and from the fact of his erratic driving before the collision and from his possession of liquor and from the testimony of the nurse at the hospital. Conceding that the finding as to intoxication is against the weight of evidence, and that same was an ultimate issue (which is not the case) even then the findings as to contributory negligence are not necessarily destroyed. Each finding as to contributory negligence has some evidence to support it. We think a speed forty-five miles per hour finds support in plaintiff's own testimony and that of Ross. The finding of lack of control is consistent with the finding of the unlawful rate of speed. The finding that just prior to the collision plaintiff turned his car to his left is consistent with the finding that it was negligent for him to fail to turn to his right. It is fairly deducible from Hicks' own testimony that Ross sought before the impact to maintain or regain control over his car. With some reason it might be asserted that had Hicks been operating his car at a more moderate rate of speed the collision would not have occurred. The assignment that the findings here assailed are against the preponderance of the evidence is overruled.

■ The court executed witness John W. Ross from the rule as an agent for defendant Frost. Frost was not present at the trial, and it seems had another agent there. Ross was the only one connected with the defendant that was in a position to know the facts surrounding the collision. Hicks and his wife were neither under the rule because they were parties to the suit. We hold that the trial court did not abuse its discretion in excusing the witness Ross from the rule. Rule 267, Texas Rules of Civil Procedure; 44 Tex.Jur. Sec. 112, p. 1088; Sugg v. Sugg, Tex.Civ.App., 152 S.W.2d 446; Vaughan v. Gulf Ins. Co., Tex. Civ.App., 151 S.W.2d 227. The plaintiff sought to show by the witness Anderson that when he saw Ross on the road a short distance from the town of Brady that in his opinion Ross was drunk or under the influence of intoxicating liquor. In ordinary cases a non-expert witness having the opportunity to observe the conduct of a person may give his opinion as to whether such person is sober or otherwise. Anderson saw Ross while Ross was passing Anderson's moving truck. He passed Ross when Ross was parked on the side of the road; saw him again when he thereafter passed him; saw him in front of him for about the distance of five miles after Ross had passed him until Ross speeded up; saw him apparently drinking from a bottle. It is true at no time was he in very close contact with Ross and during the time he observed him was driving and managing his own truck. However, it behooved him under the circumstances to observe Ross as closely as he could, assuming the truth of the witness's testimony. In our opinion the court erred in sustaining the objection,

and likewise in sustaining the objection to the testimony of Miss Harper that in her opinion Ross was intoxicated. Henson v. Warren, Tex.Civ.App., 274 S.W. 185; Evidence, McCormick & Ray, p. 823, Sec. 646. Ross's intoxication was some evidence of his negligence. It is true the verdict found Ross guilty of negligence. If harmful effect it had as to plaintiffs, it was on the findings as to contributory negligence. Ross's testimony did have bearing on this issue. If he were in fact intoxicated it had bearing on his credibility. Hicks' conduct necessarily had relation to that of Ross. While it is not thought that the issue as to Ross's intoxication or non-intoxication was an ultimate issue in the case, it is thought that same was an important circumstance having bearing on the negligence of Ross, and as to whether Hicks was guilty of contributory negligence. See Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, loc. cit. 518, par. 12, 141 A.L.R. 50.

■ Plaintiffs requested and the court refused the following special charge:

"You are further instructed in the above cause that any fact may be proved by circumstances as well as by direct evidence."

The evidence in this case was in part at least circumstantial. A party relying on circumstantial evidence in whole or in part is entitled to a charge on circumstantial evidence. Jones v. Hess, Tex.Civ.App., 48 S.W. 46; Herndon v. Burnett, 21 Tex.Civ. App. 25, 50 S.W. 581 (Wr.Ref.); Rounds v. Coleman, Tex.Civ.App., 214 S.W. 496; Parr v. Gardner, Tex.Civ.App., 293 S.W. 859 (Wr.Dis.); West v. Cashin, Tex.Civ. App., 83 S.W.2d 1001 (Wr.Dis.); Brazos River C. & R. Dist. v. Harmon; Tex.Civ. App., 178 S.W.2d 281 (Re.D.); Rule 277, Texas Rules Civil Procedure.

■ This verdict was a finding in favor of plaintiff on issues as to which he had the burden. However, we think this is not material. In considering any of the issues in the case it was the duty of the jury to take into account all relevant circumstantial evidence. While the charge was not carefully drawn, we think it was substantially correct and it is held that the court erred in refusing same.

The court refused the following special issue requested by plaintiffs:

"In the event, but only in the event you have answered Special Issue No. 8 "Yes" (or in the affirmative) then you will answer the following:

"Do you find from a preponderance of the evidence that just before the collision and at the time Hicks' car so turned, (if you have found he did so do), he, the said Hicks, was acting in an emergency?

"In connection with the above issues you are instructed that the word emergency as used in the foregoing special issue next above means a condition arising suddenly and unexpectedly and not proximately caused by any negligent act or acts of P. C. Hicks, if any, and which called for immediate action on his part without time for deliberation."

Special Issue No. 8 was as follows:

"Do you find from a preponderance of the evidence that just prior to the collision the plaintiff P. C. Hicks turned his automobile to his left so as to cause same wholly or partially to go over to his left-hand side of the road?"

To this issue the jury answered yes.

■ Special issues 8–a and 8–b submitted respectively negligence and proximate cause in relation to No. 8. It is thought the issue of an emergency was in this case. This collision was due either to the negligence of Ross, the negligence of Hicks, or the concurring negligence of Ross and Hicks. If Hicks was free from negligence Ross was guilty of negligence. If just prior to the collision Hicks was in a position of peril or apparent peril, it was on account of the negligence of Ross, if Hicks was free from negligence. Beyond question, where a plaintiff is placed in a situation of peril or apparent peril by the negligence of defendant, and under the stress or compulsion of fear or panic reasonably engendered by such negligence so acts that he suffers injury, such action does not constitute negligence. International & G. N. R. v. Neff, 87 Tex. 303, 28 S.W. 283; Texas & P. v. Watkins, 88 Tex. 20, 29 S.W. 232; Jackson v. Galveston H. & S. A. Ry., 90 Tex. 372, 38 S.W. 745;

Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545; Foster v. Woodward, Tex.Civ.App., 134 S.W.2d 417 (Wr.ref.). The charge requested may have been taken from the case of Dr. Pepper Bottling Co. v. Rainboldt, Tex.Civ.App., 66 S.W.2d 496, reversed on other grounds; Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679. In that case the court of Civil Appeals held the issue was submitted by the two special issues set forth. The Supreme Court approved this holding, but the form of the issues was not discussed. In the case of Anding v. Queener, Tex.Civ.App., 138 S.W.2d 126 (want of merit), the issue was submitted in about the same form. In case of action in an emergency, either by a defendant or plaintiff, justice would seem to demand that in some way the jury in passing on the issue of negligence should be informed of the effect of the emergency. Action in an emergency does not in all cases take away the quality of negligence from the action. In cases of discovered peril the defendant, regardless of the emergency, must act as a person of ordinary prudence under like circumstances.

However, a plaintiff free from negligence placed in imminent and sudden peril by the negligence of defendant, is not to be held guilty of negligence if under the stress of compulsion of panic or fear reasonably resulting from the defendant's negligence he fails to take the best or proper means of escape from such peril. International & G. N. R. Co., v. Neff, 87 Tex. 303, 28 S.W. 283.

 It is believed that the issue of sudden peril or emergency was in this case. There was testimony that defendant's car was operated on its lefthand side of the road at an unlawful rate of speed; wove back and forth from its left to its right hand side of the road as it approached the car of plaintiff. In Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545, four principles are set to govern liability in cases of sudden peril: First, the terror or alarm must be caused by the negligence of defendant; second, the apprehension of peril from the standpoint of the injured person must have been reasonable; third, the appearance of danger must have been so im-

minent as to leave no time for deliberation; fourth, and in cases where the evidence raises an issue of negligence on the part of the plaintiff, the negligence of plaintiff must not have concurred in bringing about a situation of peril or contributing and creating the startled, dazed or confused condition of plaintiff's mind. There can be no question but what the issue in connection with the definition submits that the peril was caused by the negligence of defendant, in that it submits as to whether Hicks was free from negligence. If Hicks was free from negligence, Ross was negligent. So as to the third principle laid down by the Supreme Court the appearance of danger must have been so imminent as to leave no time for deliberation. The fourth element is likewise comprehended in the definition in connection with the issue requested. The second requisite is not so clearly comprehended in the issue and definition. However, an emergency is in part defined as calling for immediate action on the part of Hicks without time for deliberation. Beyond any question, as the car driven by Ross approached the Hicks car it was part of the time at least driven on the east, or its left hand side of the highway. Admittedly it was driven at a considerable rate of speed. The only emergency that could have confronted Hicks was the imminent danger of a collision with Ross's car. The issue might have been better formulated, might have been presented in two or more issues; the matter might have been presented by an explanatory charge. However, we think same was substantially correct. Dr. Pepper Bottling Co. v. Rainboldt, Tex.Civ.App., 66 S.W.2d 496; Id., Supreme Court, Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679; Anding v. Queener, Tex.Civ.App., 138 S.W.2d 126, (Wr. den.W.M.)

If the court had thus submitted the issue, and same had been answered in the affirmative and the defensive issues had all been answered as they were in the verdict returned, then there would clearly have been in conflict with the finding that Hicks was guilty of negligence in turning to his left; in the finding that he was guilty of negligence in failing to turn to his right, and we think it would have been in con-

flict with the findings that he failed to have his car under control and was operating same at an unlawful rate of speed. Anding v. Queener, Tex.Civ.App., 138 S. W.2d 126.

■ Misconduct of the jury is earnestly urged as a grounds for reversal and remanding. The misconduct urged is the assertion by some of the jurors that it was immaterial how the questions submitting contributory negligence on the part of plaintiff were answered in that if they returned answers to the questions as to the amount of damages plaintiff would recover same regardless of how the question submitting contributory negligence were answered. That there was some discussion along these lines during the deliberation of the jury is undisputed. There is a dispute, however, as to whether same occurred before or after the answers on the issues submitting contributory negligence had been agreed upon. Evidence was heard on a motion for a new trial as to misconduct of the jury. No finding of facts on the motion for a new trial appears in the transcript, hence we must assume if necessary to support the trial court's action, that the finding was that the discussion took place after answers had been agreed upon as to the issues of contributory negligence. Of course if these statements were not made until after answers to the issues had been agreed upon, the statement could not have influenced the verdict. As to when these representations were made there is a conflict in the evidence. Beyond a doubt there was evidence to support the implied finding of the trial court. In our opinion we are not authorized to say that such finding is against an overwhelming preponderance of the evidence. If these discussions had taken place prior to the agreement on the answers to the issues of contributory negligence, the verdict should be set aside. Allcorn v. Fort Worth R. G. Ry. Co., Tex. Civ.App., 122 S.W.2d 341 (Wr. Ref.)

However, if the material issues as to contributory negligence had been agreed upon prior to such discussion, then the assignments should be overruled. Price v. Biscoe, 141 Tex. 159, 170 S.W.2d 729.

For the errors heretofore discussed it is ordered that the cause be reversed and remanded for another trial.

On Motion for Rehearing.

In the light of appellee's able motion for rehearing this case has been reviewed throughout, and we still adhere to the opinion that same should be reversed.

Plaintiffs' pleadings, in the absence of exceptions, are deemed sufficient to raise the issue of emergency. It appears without doubt the issue was raised by the evidence. The case of Dallas Railway & Terminal Co. v. Young, Tex.Civ.App., 155 S.W.2d 414 (W.R.), is deemed to govern here. The form of the issue there' was practically the same as the form of the issue here. The case was reversed and remanded for failure to submit the issues.

The motion is overruled.