be under the provisions of the law which allow the action of the local assessors to be reviewed "in the same manner and with the same force and effect as if the assessment had been made by the local assessors." If the assessment had been made by the local assessors, there could be no doubt but that the writ must be returnable at a special term of the supreme court held in the district in which the local assessors acted; and it would seem to follow that it was the intention of the legislature to prescribe that the proceedings for this review should be within the same district. I think this conclusion is directly in line with what was said by Judge Denio in Mygatt v. Washburn, 15 N. Y. 315: "When the statute speaks of the time when the assessment is made, it refers to the binding and conclusive act which designates the taxpayers and the amount of taxable property." Now, that binding, conclusive act is done when the assessors insert in the assessment roll the value of the special franchise to be assessed. Until that is done, the assessment is not complete. The local assessors have substantial duties in the apportionment of the amount fixed by the state board as the value of a franchise before the assessment becomes complete. Our attention is called to an opinion of the special term in the Fifth judicial district, which was followed by the special term, in which a different view is taken, but I cannot agree with the conclusion there stated.

My conclusion therefore is that the writ was properly made returnable in this district, and that the order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

(63 App. Div. 65.)

KANTROWITZ v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

1. STREET RAILWAYS—NEGLIGENCE—ACT UNDER EMERGENCY.
    A street car had stopped, and plaintiff was about to alight, when a large truck came up behind the car; the driver endeavoring to check his team. The horses slipping on the wet pavement, so that the wagon pole was elevated and in danger of running into the car, the conductor suddenly started the car, and plaintiff fell against the dashboard, so that she was injured. *Held* that, in an action against the railway, the jury were not justified in treating the act of the conductor (whether to avoid injury to himself or the passengers, or whether the accident was caused by the conductor striking plaintiff in endeavoring to start the car, or by the actual starting) as negligence on the part of defendant.

2. SAME—INSTRUCTIONS.
    Defendant requested the court to charge that if the accident was caused by the act of the conductor, seeking to avoid an actual peril, as a person of ordinary prudence might have acted under the circumstances, defendant was not guilty of negligence; but the court instructed that if the conductor jostled the plaintiff in his voluntary action, or if the accident arose from the involuntary act of the conductor in the presence of a peril to himself, or from plaintiff falling to the platform without any negligent starting of the car, defendant was not liable. *Held*, that the requested instruction should have been given.
    Patterson and Laughlin, JJ., dissenting.

Appeal from trial term, New York county.

Action by Hadasa Kantrowitz against the Metropolitan Street-Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.

Ferdinand E. M. Bullowa, for respondent.

INGRAHAM, J.   The defendant appeals from this judgment, and the question is as to the defendant's negligence.   The plaintiff was a passenger upon a horse car of the defendant's railway, and she wished to alight at the corner of Seventh avenue and Fifty-Ninth street.   The plaintiff testified that as the car came to this corner it stopped, and her companion, a Mrs. Spero, alighted from the car first.   She was about to help the plaintiff to alight, the plaintiff having one foot off the car and the other on the step, when the conductor pulled the strap and hurled her back, and that was all she knew until she found herself at home, suffering from an injury to her knee.   On cross-examination the plaintiff testified that she did not remember that a horse and wagon stopped suddenly at the back platform of the car, or that the driver uttered a cry or a shout; that all of that might have occurred without her remembering it; that she did remember that Mrs. Spero was on the ground and put out her hand to help her, and with that the conductor pulled the strap, and that is all she knew.   Mrs. Spero testified that she first alighted from the car, and turned to assist the plaintiff to alight; that "as she wanted to alight there was a truck drove up into the back of the car, and the conductor, in moving to get out of the way of the horses, struck Mrs. Kantrowitz and threw her against the dashboard of the car, and she fainted.   The conductor pulled the bell and the car stopped.   The car was standing when I and Mrs. Kantrowitz were about to get off.   The car started just as Mrs. Kantrowitz was about to alight.   *   *   *   When the car started she struck herself against the dashboard, causing an injury to her knee."   On cross-examination she testified that, when she got off, the conductor was standing on the back platform, with his back to the horses; that the conductor struck plaintiff, and she was pushed toward the back of the car; that, in moving to get out of the way, he moved away from the dashboard.   She said: "I can't describe more particularly where he struck her and where she was struck, but I saw her knocked against the dashboard.   I saw her strike the dashboard. It was the movement of the conductor that threw her against the dashboard, at the time he had his hand on the bell.   I don't remember whether he had his hand on the bell pull before he moved away from the horse.   I heard the bell ring, and I jumped on the car while it was in motion.   *   *   *   I am positive the movement of the conductor threw her against the dashboard, and he pulled the bell."   That she could not tell whether the car started after plaintiff was thrown against the rear dashboard or not.   That her feet were on the platform.   That she was not alighting from the car, with one of her

feet on the ground. That the witness was sure that her foot was not on the ground. That one of her feet when she attempted to alight was on the platform, and one on the step. That the striking of the plaintiff by the conductor and the starting of the car were at the same time, and that was the time that the plaintiff fell. That the plaintiff was thrown towards the body of the car, not towards the dashboard. This testimony on the part of the plaintiff distinctly placed the cause of the accident upon the conductor's striking the plaintiff and throwing her against the body of the car or against the dashboard as he attempted to get out of the way of the horses attached to the truck that drove up behind the car. The complaint, however, alleges that the accident happened because of the starting of the car with a violent and sudden jerk, which was so unexpected that the plaintiff was violently and forcibly precipitated against the rear platform and the dashboard of the car, with such force that she was rendered unconscious; but, from the testimony of the plaintiff and Mrs. Spero, the accident was caused by the conductor's striking her or pushing her. Mrs. Spero testified that at the time the conductor moved there were two horses attached to a truck immediately behind the car, the horses' heads being near enough to touch the conductor, and he moved at the time he struck the plaintiff to get out of the way of the horses. On the part of the defendant there was called a witness who was a passenger upon the car, and he seems to have been an intelligent man, entirely disinterested. He testified that it was a "miserable night," and the streets were wet; that as the car was stopping on the corner of Fifty-Ninth street and Seventh avenue there was a fearful shout from behind, that came from the driver of a very large, covered wagon; that, the streets being slippery, he had difficulty in stopping his horses, and he was pulling with all his might on the lines and shouting to some one; that it looked as if the pole was going to go over the dashboard of the car and hurt some one, but it did not; that the conductor was standing against the dashboard when this wagon came up behind the car; that he had just got upon the car, before the accident, when the car was on the east side of Seventh avenue; that there were several passengers on the back platform. The witness' attention was first called by the driver of the truck shouting. He says that he saw the wagon, saw the horses being pulled up, saw the shaft come up in the air, and saw the people on the platform move a little bit, as if afraid of the shaft; that the wagon was coming very fast, and that the horses slid some distance as he pulled them up.

Upon this testimony a motion to dismiss the complaint was denied, to which the defendant excepted, and the question was submitted to the jury. I do not see, upon this testimony, that there was proof of negligence on the part of the conductor of the car for which the defendant was liable. We assume that he had stopped the car on the corner of Fifty-Ninth street and Seventh avenue to allow several passengers upon the car to alight. After the car had come to a standstill, and one, at least, of the passengers had alighted, and the plaintiff was about to alight, a large truck drove

up behind the car, the driver shouting to some one to get out of the way, endeavoring to stop his horses, and the horses sliding over the wet pavements, so that the pole was elevated, with an apparent danger of running into the car and injuring the passengers upon the car. There was no one, apparently, in the act of alighting. The plaintiff was upon the platform. A condition was thus created under which the conductor was required to act at once. The conductor was required to exercise his judgment as to what should be done to avoid injuring the passengers of the car. If he had allowed the car to stand, without making any movement to get out of the way, and the plaintiff, as she was on the back platform of the car, had been struck by the pole of this wagon and injured, there would have been much force in the contention that the conductor was negligent in not moving the car so as to avoid the collision. He saw the situation, realized the danger, and moved to start the car, and in so moving struck the plaintiff. The conductor, thus, in an emergency, in a situation requiring prompt action, acted in a way that seemed to him to be for the protection of the passengers; and, even if he was guilty of an error of judgment,— which is extremely doubtful,—the defendant was not liable. This rule has been settled in this state by numerous decisions. It was said in Lewis v. Railroad Co., 162 N. Y. 61, 56 N. E. 548:

"When an emergency presents itself, and a person is under great excitement from the presence of an impending peril, he may not act with that perfect judgment that he would under other and different circumstances, and still not be negligent. Railways are not liable for a mistaken exercise of judgment upon the part of their servants to act with the utmost possible promptitude when the circumstances are such as to afford no time for deliberation. Where an employé of a railroad company is confronted with a sudden emergency, the failure on his part to exercise the best judgment the case renders possible does not establish lack of care and skill upon his part, which renders the company liable. It is not responsible even for his error of judgment."

And in Wynn v. Railroad Co., 133 N. Y. 575, 30 N. E. 721, the same rule was applied, and what was there said applies to this case:

"He was confronted with a sudden emergency, and we cannot now say that his action was not the best that could have been performed under the circumstances. Even a failure to exercise the best judgment which the case rendered possible cannot fairly be claimed as evidence of a lack of care and skill."

But, even if the evidence would have justified the court in submitting the question of the defendant's negligence to the jury, there was error in refusing a request to charge. The court charged the jury that the plaintiff was bound to establish two propositions. The first is "that this car was negligently started on its way by the conductor, and that from that starting the injury happened to the plaintiff of which she complains"; and the second, "that there was no negligence upon her part which contributed to the injury." The evidence of the plaintiff was that her injury was caused by the conductor striking her and pushing her against the car or the dashboard. Certainly the jury might well have found from this evidence that she was thrown by the conductor striking her and pushing her against the car, and not by the starting of the car. The court hav-

ing thus charged the jury, the defendant requested the court to charge that:

"If this accident to the plaintiff was caused by the act of the conductor, who was obeying a natural impulse in seeking to escape an actual peril for which he was in no wise responsible, and a person of ordinary prudence might have acted in the same way under the same circumstances, the defendant was not guilty of negligence, and the plaintiff cannot recover."

It cannot be disputed but that that proposition was correct; nor can it be disputed that upon this evidence the jury might have found that the accident was caused by the act of the conductor in striking the plaintiff as he was seeking to escape from the horses or the truck, as described by the plaintiff's witness. The charge of the court did not cover this request. The learned judge charged that if the conductor started forward and jostled the plaintiff, from which the plaintiff was thrown against the body of the car, and if whatever injury she received resulted from that involuntary action of the conductor, the company was not responsible, and that, if they so found from the evidence, their verdict should be for the defendant, if they found from the testimony that there was no negligent starting of the car. Thus, although the injury was caused by the involuntary act of the conductor, still the jury could find only for the defendant if they found that there was no negligent starting of the car. Again, the court charged:

"But if you find that this occurrence to her arose from the involuntary act of the conductor in the face of some peril to himself, or that it resulted from her fainting or falling to the platform without any negligent starting of this car, then your verdict should be for the defendant."

The request to charge went further than the court had charged; that is, that if the accident happened from the act of the conductor, who was obeying a natural impulse in seeking to escape an actual peril for which he was in no wise responsible, then the defendant was entitled to a verdict. But, upon the whole evidence, I fail to see that the jury were justified in treating this act of the conductor, whether to avoid an injury to himself or to protect the passengers of the car, or whether the accident was caused by the conductor striking the plaintiff in his attempt to start the car to avoid a collision with the truck, or by the actual starting of the car, as negligence for which the company is responsible.

It follows that the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except PATTERSON and LAUGHLIN, JJ., who dissent.