BRIDGET STEWART *v.* CENTRAL VERMONT RAILWAY COMPANY.

Special Term at Rutland, November, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 21, 1913.

*Carriers—Duty. to Passengers—Emergency—Negligence.*

Where a passenger train was just starting, and a man ran out of the passenger station and stumbled and fell lengthwise on the edge of the platform and, as the conductor thought, was probably going under the wheels, it was not negligence for the conductor immediately to make an emergency application of the air brake, in consequence whereof a passenger who had not yet reached her seat was thrown and injured, and so she could not recover; the conductor not knowing her position.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1911, *Taylor,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The defendant seasonably moved, in arrest of judgment, that the general verdict be set aside, and that judgment be rendered for the defendant. Motion denied, *pro forma,* to which the defendant excepted. The opinion states the case.

*C. W. Witters, Clarke C. Fitts* and *Hermon E. Eddy* for the defendant.

*T. W. Moloney* and *B. L. Stafford* for the plaintiff.

HASELTON, J. This is an action on the case for personal injuries. Trial was by jury and a general verdict for the plaintiff was returned. A special finding, hereinafter referred to, was made. Judgment was rendered *pro forma* for the plaintiff. The defendant excepted.

The defendant is a common carrier of passengers. The plaintiff, who was a passenger of the defendant, received the injuries complained of in a car of the defendant at its Montpelier station. She got aboard the car in question and had not become

seated when the train to which the car belonged started up. She was thrown down by the sudden stopping of the car and in consequence received injuries.

In answer to a special question submitted to them the jury found that "the train stopped in the manner and for the purpose and under the circumstances testified to by conductor Powers." Mr. Powers was the conductor of the train and under this finding we need not and cannot look beyond his testimony in reviewing the matters covered by the special finding. His testimony was to the following effect: About five minutes before the train started he went into the waiting room of the station and announced his train saying: "This train for Montpelier Junction, northbound train." Before giving the signal for starting he looked the length of the platform and when he had given the signal he stepped onto the end of a car and the train began to move. Just then a man came out of the station carrying a grip in his hand and a raincoat on one arm, and ran for the train. The raincoat dragged on the platform. The run across the platform was twelve or fifteen feet. The man reached for the handle of the car and as he did so he stumbled and fell lengthwise on the edge of the platform where there were only eight or ten inches between the platform and the car wheels. The conductor in his testimony expressed his apprehension of the danger by saying: "I could see that man probably going under the car wheels." The train was equipped with air brakes, and a lever controlling the brakes was at the end of the car where he was, just inside the door. It was there to be used in case of emergency and upon seeing the situation of the man and apprehending the danger which he was in, the conductor, as quickly as possible, stepped inside the car and pulled down the emergency brake and so stopped the train. The train had barely started and when it stopped had not moved more than half a car's length. This narrative found by the jury to be true affirmatively shows, as matter of law, because reasonable men cannot differ about it, that the conductor was free from negligence, that whether we regard the man who was attempting to board the train as a passenger, a licensee, or a trespasser, the immediate stopping of the train in the circumstances narrated was a duty owed him after he was seen by the conductor in the perilous position already mentioned.

It appears that the conductor did not warn the traveller as the latter was rushing to the train, and it is argued that this failure to warn tends to show negligence. But the train was starting gently and the distance across the platform which the man ran was so short that there is no force in the suggestion.

While it is argued that the man was in "extreme danger" while running to the train it is further argued that he was in no danger at all after he had fallen on the edge of the platform, and that there was not the slightest need of stopping the train except for the purpose of taking the man on board. But this argument is not warranted. The conductor saw the man fall where he did and, without waiting to observe further, acted on the spur of the moment and stopped the train as he did. The need of stopping the train was the imminent danger that the man would be killed if the train was not stopped.

It is argued that the conductor might have stepped down and prevented the man "from doing himself injury," but the distance of the conductor from the man was such as to make this suggestion chimerical. It is argued that the conductor should have made a service application of the brake and not an emergency application since so the car would not have stopped so suddenly as it did. But in the circumstances there was no reason why the conductor should speculate as to how far the train could be allowed to run.

It is true that a carrier of passengers owes to them a very high degree of care, but the train had moved but a few feet, and was moving gently, the conductor did not know of the plaintiff's position in the car, and in taking the steps which he did to avert peril to life he did not, in the circumstances found by the jury to be true, violate any duty to the passengers. There were many passengers on board the train, but the plaintiff's position in the car happened to be such that she was injured in consequence of the performance by the conductor of an imperative duty. In these circumstances negligence cannot be attributed to the defendant.

After a verdict, and before judgment, the defendant moved in arrest of judgment, that the general verdict be set aside and that judgment be rendered for the defendant. The motions were overruled *pro forma* and the defendant excepted. As has already been said the judgment on the general verdict was *pro forma.* We think that the general verdict should have been

set aside and that the defendant's motion for judgment in its favor should have prevailed.

*Accordingly the pro forma judgment of the county court is reversed and judgment is rendered for the defendant to recover its costs.*