## DALLAS RY. & TERMINAL CO. v. YOUNG.

### No. 2168.

Court of Civil Appeals of Texas. Eastland.

Sept. 26, 1941.

Rehearing Denied Oct. 24, 1941.

Defendant entered a general demurrer, general denial and plea of contributory negligence, etc. Trial was before the court and jury and the case was submitted on special issues and upon the answers returned the court entered judgment for plaintiff. At the conclusion of the testimony defendant requested a peremptory instruction in its favor and later made motion for judgment notwithstanding the verdict. These motions were overruled and the defendant appeals.

In substance it is the contention of the appellant that the judgment should be reversed and rendered in its favor by this court for the reasons: (1) That appellant's operator at the time of the accident was presented with an emergency which precludes the appellee, Mrs. Young, from recovering for· any injuries sustained by reason of the motorman's act in suddenly stopping the street car, since he was suddenly and unexpectedly confronted with an emergency not caused, created, or in any wise contributed ·to by his negligence and by reason of which (emergency) he was called upon to act immediately and without deliberation in his effort to avert a probable and potential calamity, and that the course pursued by him in so acting was calculated to best protect both his passengers and those upon the street. (2) That the emergence of traffic (pedestrian and vehicular) out into the intersection of the street when the signal light changed from green to amber in and of itself was a new and independent cause and the sole proximate cause of the appellee's injuries under the principle (a) "that one ·who does nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, is not made liable for the injury, if there intervenes between such prior acts creating the condition and injury a distinct and unrelated but efficient cause of the injury; and (b) an injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence, is not actionable since such an act is not the proximate cause, but at‾ most either the remote cause or no caus̀e whatever of the injury."

Burford, Ryburn, Hincks & Charlton, ·of Dallas, for appellant.`

Carden, Starling, Carden & Hemphill, of Dallas, for ·appellee.

LESLIE, Chief Justice.

Mrs. Mamie D. Young instituted this suit against the Dallas Railway & Terminal Company to recover damages for personal injuries sustained by her while a passenger on the defendant's street car.

Under these contentions and upon the theory that the uncontradicted evidence established the existence of an emergency, appellant predicates error in the court's judgment under its first four propositions. The fifth proposition is that if such testi-

mony of the emergency is not undisputed, then an issue of fact was raised which was not submitted by the court, but refused by it when tendered by the appellant, accompanied by proper definition of "emergency."

The verdict of the jury convicted the defendant upon two grounds of negligence: (1) That the motorman negligently stopped the car suddenly with a jerk, and that such negligence was a proximate cause of her injuries, and (2) that the motorman's failure to continue to drive "cautiously" through the intersection of said street under the circumstances was negligence proximately causing said injuries. The plaintiff was found to be free from contributory negligence.

The accident occurred about 5:30 in the afternoon in the down town business section of Dallas. The plaintiff, carrying a sandwich plate and her purse under her arm, boarded a westbound Highland Park street car at Main and Murphy. She got on at a front entrance door and started walking back into the car (her back to the front of the street car) to find a seat, intending to sit in the first cross seat. The motorman in the meantime started the car forward to cross Murphy Street. The vestibule where the motorman sits to operate the car is lower by 8 or 10 inches than the main part of the car and while the plaintiff was in the act of walking from the vestibule to the seat and before she turned around the street car suddenly stopped causing her to lose her balance and fall backward to the floor of the car into the vestibule. She alleges and testifies that in boarding and passing into the car she did not observe or know the color of the traffic light fronting the street car, but that the motorman was and had been for a long time in a position to see and observe the traffic light, whatever its color at the time he started and stopped the car.

After picking up the passengers at that point, the motorman started the car to cross Murphy Street. At such starting the traffic light was green and the car had moved but two or three feet when the light changed to amber. It is the contention of the appellant that immediately upon such last change of the light both pedestrian and vehicular traffic on Murphy Street proceeded to cross Main Street in front of the street car and that the motorman, in order to avoid a collision with the same, threw on his brakes and brought the street car to a stop. That under such circumstances the operator was necessarily confronted with a sudden emergency which required him to act instantly and without deliberation in an effort to avoid striking a pedestrian or colliding with passing vehicles; that stopping the street car as quickly as he could to avert such catastrophe was not negligence, but was the fulfillment of the care required of him by law; that under such circumstances there is no evidence that such conduct was negligence and a proximate cause of the plaintiff's injuries. That the change of the light and the movement and condition of the traffic in front of the street car were of themselves the proximate cause of the plaintiff's injuries; and such causes, as in law contributed to or furnished a new and independent cause, and the sole proximate cause of the injuries.

It will be observed that each of the appellant's five propositions are fundamentally based upon the alleged fact of emergency (at the time of the accident) thereby invoking what is here advanced as the "emergency rule" exonerating defendant from any liability under the testimony which, as pointed out, appellant asserts to be uncontradicted in the establishment of such emergency. That is the only assault made upon the verdict and judgment and the contentions will presently be examined in the light of the testimony and these contentions.

 In the first place, we think the emergency rule which the appellant seeks to employ in the trial of this cause is recognized by the authorities of this State. The Supreme Court of Wisconsin in Hanson v. Matas, 212 Wis. 275, 249 N.W. 505, 506, 93 A.L.R. 546, says: "The emergency rule exculpates one when he acts upon his judgment in an emergency of imminent peril not created by his own fault." The rule is stated in 13 C.J.S., Carriers, under the heading of Sudden Jerks and Jolts, at p. 1410, § 750, as follows: "A carrier is not liable for jerks or jolts which are necessarily incident to the use of the conveyance, but the rule is otherwise where the jerk or jolt is unnecessary, or sudden and violent." Under Annotations in L.R.A. 1915D, at p. 369, it is said: "A carrier is not liable for injuries to a passenger resulting from the sudden stopping of a train in an emergency not due to the carrier's negligence."

The emergency rule has more often been applied in Texas to exculpate the plaintiff from the charge of contributory negligence, but there would seem to be no doubt that it operates under certain conditions as effectively to relieve the defendant from the charge of primary negligence. Dr. Pepper Bottling Co. v. Rainboldt, Tex.Civ.App., 66 S.W.2d 496, 501; Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679, 684; Anding v. Queener, Tex.Civ.App., 138 S.W.2d 126; International & G. N. Ry. Co. v. Neff, 87 Tex. 303, 28 S.W. 283; Missouri, K. & T. Ry. Co. v. Rogers, 91 Tex. 52, 40 S.W. 956; International & G. N. Ry. Co. v. Bryant, Tex.Civ.App., 54 S.W. 364; Texas Midland Ry. Co. v. Booth, 35 Tex.Civ.App. 322, 80 S.W. 121; Yellow Pine Paper Mill Co. v. Wright, Tex.Civ.App., 154 S.W. 1168; Alamo Iron Works v. Prado, Tex. Civ.App., 220 S.W. 282; Graham v. Hines, Tex.Civ.App., 240 S.W. 1015; Browning v. Beck, Tex.Civ.App., 73 S.W. 2d 626, 628.

For authorities in other jurisdictions see Cleveland City Ry. Co. v. Osborn, 66 Ohio St. 45, 63 N.E. 604; Cleveland Ry. Co. v. Orwig, 124 Ohio St. 134, 177 N.E. 201; Canton Motor Coach Inc. v. Hall, 460 Ohio App. 516, 189 N.E. 505; Mintz v. International Ry. Co., 227 N.Y. 197, 124 N.E. 893; Kantrowitz v. Metropolitan Street Ry. Co., 63 App.Div. 65, 71 N.Y. S. 394; Tochek v. Monongahela Transport Co., 109 W.Va. 20, 152 S.E. 776; Corkhill v. Camden & S. Ry. Co., 69 N. J.L. 97, 54 A. 522; Stewart v. Central Vermont Ry. Co., 86 Vt. 398, 85 A. 745, 44 L.R.A., N.S., 433; Robinson v. Connecticut Co., 122 Conn. 300, 189 A. 453; Cook v. Philadelphia Rapid Transit, 120 Pa. 565, 182 A. 755.

As said in 5 Tex.Jur. p. 680, sec. 89, "The issue as to responsibility is in such circumstances [of emergency] to be resolved by reference to the act or omission which brought the dangerous situation into existence."

We now come to an application of the "emergency rule" to the facts before us. After a careful consideration of the testimony we are of the opinion that uncontradicted evidence did not require the trial court to grant the appellant's motion for an instructed verdict or to enter for it a judgment notwithstanding the verdict. In other words, we do not find that the uncontradicted evidence or the findings of the jury established the existence of an emergency warranting the conduct of the motorman in suddenly stopping the car with a jerk. At most an issue of fact was raised. As we view the testimony taken as a whole, reasonable minds could easily differ on such issues.

On the issue of negligence generally, the appellee described the jerk causing the fall as a "terrific hard jerk." The appellant interprets the facts differently in that respect, as well as the circumstances relating to the existence of an emergency.

Further, in the disposition of the appellant's propositions a traffic ordinance of the City of Dallas may be material. The appellant itself, in its Fourth Amended Answer, sets out the provisions of said ordinance substantially in full, omitting therefrom section (b), division (1) thereof, relating to yellow or amber light. Discussing this ordinance in its brief the appellant, in part, says: "The ordinance merely provides that a change of signal light from green to yellow will not subject one entering the intersection to a criminal prosecution when in his judgment his vehicle cannot be made to stop in safety. The ordinance does not attempt to eliminate the element of judgment. It does not legislate upon the factor of time. Its scope does not embrace a sudden and unexpected emergency by reason of which one is called upon to act immediately and without deliberation in his effort to avert a probable and potential calamity. It does not require one to act at his peril."

The appellee pleaded the same ordinance quite as completely including the provisions relating to amber light and the duty of all traffic to observe the same when present at a crossing. The ordinance sets forth the signal legend and in part reads as follows:

"(a) Green alone or 'Go.'

"(1) Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turns.

"(b) Yellow alone or 'Caution', when shown following or overlapping the green or 'Go' signal.

"(1) Vehicular traffic facing the signal shall stop before entering the nearest cross walk at the intersection, but if such stop cannot be made in safety, said vehicle, at the time of application of the

yellow light, may be driven cautiously through the intersection.

"(c) Red alone or 'Stop.'

"(1) Vehicular traffic facing the signal shall stop before entering the nearest cross walk at an intersection or at such other point as may be indicated by a clearly visible line and shall remain standing until green or green arrow or 'go' is shown alone.

\* \* \* \* \*

"Cross walk: (a) That portion of the roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections."

The motorman testifies that he started the street car at a time when the green light controlled the traffic and that while in motion the yellow or amber light appeared. While much of the motorman's testimony is to the effect that he stopped the car to avoid endangering the people and traffic crossing in front of the street car, he also testified as follows when asked these questions:

"Q. Why didn't you proceed on through the intersection? A. As I understand it is against the city ordinance to go through an amber light and also it would endanger the people that already started in front of me.

\* \* \* \* \*

"Q. You were thereat the white line when you saw the green light and then you passed over the white line? A. That is right.

\* \* \* \* \*

"Q. After you got over the white line it turned yellow? A. I started on a green light.

\* \* \* \* \*

"Q. When it turned yellow, you stopped? A. Yes sir.

"Q. You are half way across the street, do you stop? A. No, that permits you to go on across the street. The traffic is then right straight in front of you after you get half way but when you are sitting there and just start automobiles won't wait on the street car.

\* \* \* \* \*

"Q. You don't mean to say you saw danger of you hitting those people when you are already in the crossing? A. There is danger of hitting automobiles and some of them will walk right into the car."

█ Some of the above questions were doubtless propounded in the light of the portion of the ordinance permitting a street car to proceed "cautiously" on an amber light, and it will be observed that possibly the motorman stopped suddenly because he thought "it was against the city ordinance to go through an amber light", although under some circumstances a motorman would be permitted to drive cautiously through a street intersection. Whether or not the motorman was in any degree negligent in what he did or what he failed to do, there is clearly an issue of fact, and we think it cannot be said that the undisputed testimony established an emergency requiring the trial court to instruct a verdict in favor of the defendant.

The appellant's contentions as to the undisputed nature of the testimony on these material questions are based almost entirely upon the testimony of the motorman and his interpretation of the situation confronting him at the time he stopped the car with a sudden jerk. Simmonds v. St. Louis B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332.

█ Further, in answer to special issue No. 6 to which the appellant made no objection, the jury found that the operator of the street car was negligent under the circumstances "in failing to continue to drive through the intersection of said streets and that the same was the proximate cause of plaintiff's injuries." We are also of the opinion that it cannot be said as a matter of law that the undisputed testimony established the fact that the alleged emergency was in no way created by negligence on the part of the motorman. For the above reasons the propositions under consideration are overruled.

█ The defendant further contends that the failure and refusal of the trial court to submit to the jury its requested special issue No. 13 inquiring whether the street car motorman at the time and on the occasion in question was acting under an emergency (as such term was defined in an accompanying definition) was, in any event, an error requiring the reversal of this cause and a remand for another trial. This issue and said definition are in substance the same as the issue and definition of such term approved by the Court of Civil Appeals and the Supreme Court in Dr. Pepper Bottling Co. v. Rainboldt, supra, and Anding v. Queener, supra. The circumstances in the instant

case are substantially the same as those in the cases cited. The issue and definition were tendered in due form and time. The court's refusal to give the same is preserved in a bill of exception duly authenticated. There was an entire omission by the court of any such issue. Under the authorities we discover no deficiency nor inaccuracy in the issue or definition requested. In any event, the appellee does not specifically point out any such defect or inaccuracy. As indicated in the preceding portions of this opinion, the evidence raised such issue and we believe it should have been submitted to the jury. It was reversible error not to do so. Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A. L.R. 1183; Dallas Ry. & T. Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683; Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849, 854; Harris v. Leslie, 128 Tex. 81, 96 S.W.2d 276.

As this case is presented in this court the sufficiency of the pleadings is in no way challenged and we, therefore, find it unnecessary to discuss the same. However, .it is our opinion that on another trial the case should be developed with more accuracy and definiteness both in pleading and testimony.

For the reasons assigned, the judgment of the trial court is reversed and the cause remanded.

FUNDERBURK, Justice (dissenting).

In my opinion, the trial court erred in not granting appellant's motion for a judgment notwithstanding the verdict of the jury. In the light of the undisputed evidence there was no evidence of negligence. The grounds of negligence upon which the judgment necessarily rests are (1) in stopping the street car with a jerk, and (2) in failing to continue to cross the intersection instead of stopping.

With reference to the first ground of negligence the only evidence, taking it most strongly in favor of the appellee, is that the car did stop with a jerk. In my opinion, that, standing alone, is no evidence that that act was negligence. Without any reference to the doctrine of emergency there was no evidence that the street car motorman in charge of its operations was negligent in stopping the car with a jerk.

Upon the second ground of negligence, the issue submitted and finding thereon was as follows: "Do you find from a preponderance of the evidence that after the plaintiff boarded the street car and the street car had started up, the car operator was negligent, as the word negligence has been defined to you in paragraph No. 3 of the jury's charge, in failing to continue to drive through the intersection of said streets?" The answer to this issue was "yes." And it was further found that was the proximate cause of the injuries. Whether such issue could have any materiality was wholly dependent upon a fact not submitted to or found by the jury. That fact was whether or not the street car had entered the intersection before the light changed from green to yellow. The pleading of the issue was as follows: "Plaintiff * * * shows that if it shall appear from the evidence that said street car stopped for plaintiff to enter same before said street car entered the nearest cross-walk at said intersection and the green light was followed by a yellow signal *before the street car entered such nearest cross-walk,* then and in that event *only* plaintiff so alleges, and it became the duty of said operator to comply with the following provision of subdivision 1, under (b) of Section 10, * * as follows: 'If such stop cannot be made in safety said vehicle at the time of appearance of the yellow light may be driven cautiously through the intersection.'

"Plaintiff * * * shows that under the circumstances existing on said occasion such stop ·could not be made in safety and it was the duty of said operator, instead of making the stop which he did make, to have driven cautiously through the intersection, and said operator was negligent and violated said ordinance in that he failed to drive cautiously through said intersection and was negligent in that instead of driving cautiously through said intersection, he stopped abruptly and roughly and/or in such a manner as to cause plaintiff to fall and to be thrown as aforesaid."

It is perfectly clear that the provision of the ordinance upon which the issue is based could have no application except where a vehicle was already in motion upon reaching the intersection, which, in this case, was marked by a line. The pleading recognizes this and conditions the allegation upon the fact that the street car in this case had not crossed said line

into the intersection. There is no evidence that the street car had not crossed over the line into the intersection when the light changed from green to yellow. In the absence of some evidence of such fact it is entirely proper to say that the plaintiff did not even plead the issue. The issue was pleaded only in case the evidence showed that fact. Therefore, in my opinion, regardless of the doctrine of emergency the judgment was not supported by any evidence of negligence.

It is a matter of common knowledge that a street car in a city, particularly at the time of day when, as the undisputed evidence shows, there is heavy traffic, cannot be operated without the necessity at times of sudden stops. The fact that a street car stops suddenly and that a standing passenger was thereby injured alone creates no presumption of negligence and alone constitutes no evidence of negligence. The presumption of no negligence still obtains in the face of such bare facts.

In my opinion the uncontroverted evidence should be considered conclusively to the effect that the street car at the time the light changed from green to yellow had already crossed over the line and entered into the intersection and could have proceeded cautiously across the intersection, provided the situation confronting the motorman did not give rise to duties to third parties in the street which made it necessary to stop. The motorman testified that he stopped the car for passengers to enter in such a position that it was already a little over the line. All the evidence and the findings of the jury were that he started up from such position on a green light. Therefore, the ordinance provision upon which liability was predicated was affirmatively and conclusively shown to have no application to the facts. It was not necessary for this to be shown. The burden was upon the appellee to show the contrary. There was no evidence to show the contrary.

The undisputed evidence shows the traffic was heavy waiting to cross from each direction; it was undisputed that the street car had only proceeded two or three feet until the light changed. It was undisputed and the jury found that the traffic did not wait for the green light but started on a yellow light. In so doing, the traffic negligently put itself in peril.

The motorman testified he was compelled to stop to prevent running over or into persons and vehicles crossing the street. There is not one bit of evidence that this is not true. One apparently wholly disinterested witness said he looked out at the time to ascertain why the car stopped, and saw the traffic passing in front of the car which led him to the conclusion that the car stopped to prevent injury.

The doctrine of emergency is clearly presented, but independently of that doctrine, the plaintiff was required to produce some evidence of negligence. If it could be contended that all the evidence showing there was no negligence was that of interested witnesses, which, as already said, is not the case, that does not affect the requirement that there be produced some evidence of negligence. Mere denials of the existence of negligence or testimony to show there was no negligence by an interested witness when the adversary party has the burden of establishing negligence does not alone raise the issue of negligence.