Mary Lou CLAYTON, Appellant,

v.

**VOLKSWAGENWERK, A. G., aka Volkswagenwerk Aktiengesellschaft, et al., Appellees.**

No. 17532.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 14, 1980.

Rehearing Denied Oct. 2, 1980.

Kronzer, Abraham & Watkins, W. James Kronzer, Houston, for appellant.

Bean & Manning, Frank M. Bean, Houston, for appellees.

Before PEDEN, EVANS and WARREN, JJ.

PEDEN, Justice.

Mrs. Mary Lou Clayton appeals from a take nothing judgment in a personal injury suit premised on manufacturer's strict liability. She alleges that the trial court erred in: 1) refusing to strike or sever a cross–action, filed by Volkswagen against Lee's Exxon for indemnity or contribution, 2) permitting counsel for Volkswagen to tell

**16**

the jury that the appellant and Lee's Exxon had settled their differences, 3) admitting into evidence a settlement agreement executed by Mrs. Clayton and Lee's Exxon, the cross–defendant, 4) refusing to admit into evidence certain portions of the deposition of Joe Harris, an expert witness who had died some three months before trial, 5) refusing to instruct the jury to disregard an objection made by counsel for Volkswagen, and 6) and 7) refusing to include in the charge two instructions she had offered.

We sustain the third point and we reverse and remand.

On June 2, 1973, Mrs. Clayton was driving her 1967 Volkswagen convertible north on Interstate Highway 45 at 60 to 65 miles per hour when it suddenly veered left onto the shoulder of the esplanade. She tried to regain control and get back onto the roadway, but before she was able to do so the car cut sharply to the right, skidding and spinning across the northbound section of the highway and onto a grassy embankment, where it rolled completely over and came to rest on its side. She suffered severe injuries in the accident, and we have just learned that while this case was on appeal, she died.

Mrs. Clayton filed suit against Jackson Lee, individually and doing business as Lee's Exxon, and against Volkswagenwerk Atkiengesellschaft and Volkswagen of America. She alleged that the Volkswagen automobile she was driving was so defectively designed and manufactured as to render it unreasonably dangerous, complaining specifically of the car's high (and to the rear) center of gravity, steering, and suspension system, and asserting that Volkswagen had failed to warn her of the car's dangerous propensities. She also alleged that Jackson Lee or his employees had negligently mounted the two rear tires which she had purchased at Lee's Exxon some three months before the accident and that the sudden deflation of the left rear tire which resulted from the improper mounting was a producing cause of the accident.

The case was reached for trial on February 5, 1979. During the preceding week, Mrs. Clayton and Lee concluded settlement negotiations and informed counsel for Volkswagen that Lee would be non–suited. Volkswagen on February 2 filed a cross–action against Lee for contribution or indemnity. Lee was non suited by Mrs. Clayton on February 5, and the settlement agreement was executed on February 13.

The case was tried before a jury, which failed or refused to find from a preponderance of the evidence that the car was defectively designed, that Volkswagen failed to warn Mrs. Clayton of the risks involved in its operation, or that Lee negligently mounted the left rear tire. The trial court entered judgment on the verdict exonerating the appellees and Lee.

The appellant's first point of error is:
The trial court erred in failing to strike or sever Appellees' "Cross Action" over and against Lee's Exxon filed on the eve of the trial, which was filed for the obvious purpose of demonstrating to the jury that Appellant had settled her differences with Lee's Exxon and that the latter party had an economic interest in the outcome of Mrs. Clayton's case against Appellees.

In deciding whether the trial court erred in failing to strike or sever the cross-action, we note that the question was called to the court's attention in a motion in limine. In it Mrs. Clayton asked the trial judge to instruct counsel for Volkswagen to obtain the court's permission, outside of the presence of the jury, before trying to develop or state, among other things: "V. That the Plaintiff and the Lee Defendants have settled their differences." Under this item she asserted that she had dismissed her claims against the Lee group and that Volkswagen's belated attempts to implead the Lee group for contribution and indemnity, "which should be stricken under normal and ordinary circumstances because of late filing," were without force as an effective pleading because of said dismissal. She argued that it was improper for Volkswagen to implead at this late hour for the sole reason of injecting the settlement before the jury.

This fifth item in the motion in limine was developed fully by oral argument, and a bill of exception was made when the trial judge denied it. The plaintiff did not present what amounted to a motion to strike the cross–action or a motion to sever it.

■ We overrule this point. The cross action was filed while Lee and his company were still parties defendant. The trial judge was advised that Lee had agreed to answer the cross–action, and Lee did not claim surprise under Rule 63, Tex.R.Civ. Proc. As to severances, Rule 41 gives the trial judge broad discretion. *McGuire v. Commercial Union Insurance Co. of N.Y.*, 431 S.W.2d 347 (Tex.1968). Under the facts called to the attention of the trial judge in our case, we think he might well have severed the cross–action on his own motion, but we cannot say he erred in not severing it. Lee's attorney told the trial judge that he was ready and willing to forego participation in the Clayton Volkswagen trial if permitted to do so. Had this been accomplished, by severance of the cross action, the admissibility question would not have arisen.

The appellant's second point of error is:

The court erred in permitting counsel for Appellees to state to the jury panel and to the jury selected in the case that Appellant and Lee's Exxon had settled and compromised their differences.

■ The traditional rule in Texas is that settlement agreements between the plaintiff and a co–defendant should be excluded from the jury. *McGuire v. Commercial Union Insurance Co. of N.Y.*, supra; 1A Ray, Texas Law of Evidence § 1142 (3rd Ed. 1980). A recognized exception to this rule exists when a "Mary Carter" agreement has been reached, whereby the plaintiff typically releases his cause of action against one joint tortfeasor and promises to pay (or credit) the settling tortfeasor (who remains a party at the trial) a portion of the recovery obtained against the nonsettling defendant. Our Supreme Court held in *General Motors Corporation v. Simmons*, 558 S.W.2d 855 (1977) that such agreements are

admissible in evidence to impeach the testimony of the nonsettling defendant by showing his financial interest in the outcome of the suit. See also *City of Houston v. Sam P. Wallace and Co.*, 585 S.W.2d 669 (Tex. 1979); *Bristol Myers Company v. Gonzales*, 561 S.W.2d 801 (Tex.1978).

■ We agree with the appellant that the trial judge erred in ruling, at the conclusion of the hearing on the plaintiff's motion in limine, that Volkswagen could tell the jury panel on *voir dire* examination that Mrs. Clayton and Lee's Exxon had settled their differences but could not state any details of the agreement. Unless the terms of the agreement were admissible under the Mary Carter exception, the fact of settlement should have been excluded.

The trial judge changed his ruling after all parties had rested, announcing that he had decided to admit the Clayton Lee agreement into evidence.

The appellant asserts in her next point of error:

The trial court erred in admitting into evidence Appellant's Exhibit No. 90, being the Settlement Agreement between Appellant and Lee's Exxon, which was read in its entirety to the jury.

The settlement agreement in question asserts that although Mrs. Clayton had sued both Volkswagen and Lee, "it is now apparent" that Volkswagen designed, manufactured and sold a vehicle that was unreasonably dangerous.

After reciting at length and in detail some reasons why (it contends) Mrs. Clayton should recover from Volkswagen, the agreement provides:

1. Lee and his insurers guarantee Mrs. Clayton a minimum recovery of $50,000, and she guarantees that they will never be required to pay more than $50,000.

2. Lee and his insurers will not become obligated to pay Mrs. Clayton until all appeals have been exhausted.

3. It is agreed that this is not a settlement or release but is a guarantee.

4. Mrs. Clayton may appeal from any judgment.

5. She reserves all her causes of action against anyone.

6. Mrs. Clayton indemnifies Lee and his company from any liability for any sum over $50,000.

7. If Mrs. Clayton receives less than $1,000,000 from Volkswagen, Lee will pay:

| She receives | Lee pays |
|---|---|
| $500,000–$600,000 | $40,000 |
| $600,000–$700,000 | $30,000 |
| $700,000–$800,000 | $20,000 |
| $800,000–$900,000 | $10,000 |
| $900,000–$999,000 | $ 5,000 |

While the agreement in our case fits the Mary Carter pattern, Mrs. Clayton, Mr. Lee, and their counsel did not follow that pattern in carrying out the agreement. We noted that Mrs. Clayton non-suited Lee, and his counsel offered (with the blessing of Mrs. Clayton) to depart. They were held in the case by the cross-action, and it appeared in the trial that they were kept in so the settlement agreement could be introduced into evidence.

After stating that Texas adheres to the rule that information about settlement agreements should be excluded from the jury because the agreement may be taken as an admission of liability, the Texas Supreme Court pointed out in *City of Houston v. Sam P. Wallace & Co., supra,* at 673–674:

We recently recognized that an exception to that general rule will be made when a plaintiff and one defendant settle a cause on an agreement that the settling defendant will receive back a percentage of what the plaintiff recovers from the other defendant. *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex.1977). Defendant General Motors complained and this court held that it should have been permitted to introduce evidence of the "Mary Carter" agreement *so it could discredit witnesses for the settling defendant who actually had a financial stake in the success of the plaintiff's recovery.* (emphasis added)

When the settlement agreement in our case was admitted in evidence, there was no mystery as to what the other evidence would be, since all parties had rested. During the trial only Volkswagen offered evidence from any witnesses of the settling defendant, Lee. Volkswagen read a little of his deposition testimony, and of course it was not testimony that would be calculated to damage Volkswagen or help Mrs. Clayton. When the trial judge announced that the settlement agreement would be admitted in evidence, counsel for Mrs. Clayton and Lee both objected that the agreement was not being offered to impeach any witness.

 Clearly, a party is not entitled to introduce otherwise inadmissible, prejudicial evidence just to discredit testimony that he alone offered.

In addition to the reason given in *City of Houston v. Sam P. Wallace and Co.,* supra, for holding that the Mary Carter agreement should have been admitted in *Simmons,* Mr. David R. Miller suggested in a well-written article, *Mary Carter Agreements: Unfair and Unnecessary,* 32 Southwestern Law Journal 779, at 794 (1978):

Counsel for the agreeing parties in *Simmons* were clearly not attempting to deceive the court by concealing the agreement. Nonetheless, the Mary Carter agreement altered the posture of the parties and induced counsel for Feld and Johnston to promote Simmons's cause of action against General Motors. Counsel for Feld and Johnston took an active role in the damages dispute, made an extensive effort to establish that Simmons was totally blind, and on another occasion, attempted to evoke sympathy for the plaintiff. These gestures by counsel were inexplicable without knowledge of the Mary Carter agreement.

The Texas Supreme Court reasoned that informing the jury that Simmons was not "adverse" to Feld and Johnston was not a sufficient explanation of the true alignment of the parties. The court noted that by the terms of the agreement, "Feld acquired a direct financial interest in Simmons's lawsuit. The financial interest of the parties and witnesses in the success of a party is a prop-

er subject of disclosure by direct evidence or cross–examination." The court concluded that exclusion of the settlement agreement was harmful error and remanded the case for trial. (footnotes deleted).

▌ Nothing like that happened in our case, so what made the Clayton - Lee agreement admissible? Would it serve to expose the financial interest of the settling defendant or his counsel or his witnesses in helping the plaintiff recover? The fact is, none of them had done anything to help her recover. And the trial judge could have made it clear to Lee's counsel that if he should seek in jury argument to increase the plaintiff's recovery, the settlement agreement could still be admitted in evidence.

The prejudicial effect of information about settlements is apparent. We hold that the trial court erred in admitting the Clayton–Lee settlement agreement and that the error requires a reversal of the judgment.

Since this cause is being remanded, we do not reach the appellant's other points.

The judgment is reversed and the cause is remanded.