Glenn S. JORDAN, et al., Appellants,

v.

Tammy Karen SHIELDS, A minor, et al., Appellees.

No. 0983182CV.

Court of Appeals of Texas, Beaumont.

June 28, 1984.

Rehearing Denied July 26, 1984.

Gordon R. Pate, Beaumont, for appellants.

Howell Cobb, Beaumont, for appellees.

## OPINION

McNICHOLAS, Justice.

This action arises out of a multiple vehicular collision which occurred the morning of August 7, 1980, in Beaumont, Texas, at the intersection of College Street (Highway 90) and Major Drive.

College Street has two westbound through lanes and a westbound left turn lane, two eastbound through lanes and an eastbound left turn lane. Major Drive runs north and south at the intersection; one lane going in each direction. At the time of the accident, there were no left turn lanes on Major Drive. Immediately prior to the collision, the positions of the vehicles were as follows: appellee Loehr, driving a white 1975 Chevrolet station wagon was westbound on College, on the inside through lane coming to a stop; appellee Barnes, driving a silver 1980 Datsun was also westbound on College, in the left turn lane coming to a stop; Mrs. Sandra Reagan (who was killed in the collision), driving a gold Omega was northbound on Major Drive, had stopped in the intersection and then proceeded forward; appellant Jordan, driving a white sand and gravel dump truck with a gross weight of 79,000 pounds was eastbound on College Street, on the inside through lane. The Jordan truck struck the Reagan Omega broadside in the intersection, pushing the Omega across the intersection into the Barnes vehicle, continuing and coming to a rest on top of the Loehr station wagon.

Suit was initially instituted in the 172nd District Court of Jefferson County, Texas, by Tammy Karen Shields, a minor, based on the death of her mother, Sandra E. Reagan. The suit was filed against Mark D. Jordan and Glenn S. Jordan. James H. Reagan intervened in the action as a party plaintiff, both individually and as the personal representative of the Estate of Sandra Reagan, Deceased. Brent Kenneth Barnes intervened in said action as a party plaintiff against Glenn S. Jordan, Mark D. Jordan, and James H. Reagan, as Administrator of the Estate of Sandra E. Reagan, Deceased.

A suit was also instituted in the 60th District Court of Jefferson County, Texas, by Eulala Loehr, Kenneth R. Loehr, and Timothy Ray Loehr, for damages and per-

sonal injuries against Glenn S. Jordan, Mark D. Jordan, and James H. Reagan, as Administrator of the Estate of Sandra E. Reagan, Deceased. The Estate of Sandra Reagan, Deceased, cross-acted against Glenn S. Jordan and Mark D. Jordan.

The two actions were consolidated for trial in the 172nd District Court. Glenn S. Jordan and Mark D. Jordan filed a cross-action against James H. Reagan, as Administrator of the Estate of Sandra E. Reagan, Deceased. Prior to trial, the Estate of Sandra E. Reagan, Deceased, settled the lawsuit brought against it by Eulala Loehr, Kenneth R. Loehr, Timothy Ray Loehr and Brent Barnes. The case proceeded to trial on January 25, 1983, and prior to the presentation of the evidence, James H. Reagan, in his capacity as Administrator of the Estate of Sandra E. Reagan, Deceased, took a non-suit on the cause of action of the Estate of Sandra E. Reagan, Deceased, for all purposes. James H. Reagan remained a party plaintiff in his individual capacity.

Trial was had to a jury and, in response to special issues, the jury found that the accident in question was caused by both the negligence of Mark D. Jordan (75%) and the negligence of Sandra E. Reagan, Deceased (25%). Based on the answers to the special issues, the trial court awarded judgment for all plaintiffs and against Glenn S. Jordan and Mark D. Jordan. Further said judgment provided that Mark D. Jordan and Glenn S. Jordan recover nothing on their cross-action against James H. Reagan, individually or as Administrator of the Estate of Sandra E. Reagan, Deceased.

There was no evidence of any negligence on the part of either Loehr or Barnes.

As expected in intersection collision cases, the testimony from the parties is conflicting. Appellant Jordan testified that when he was about 250 feet from the intersection, the light for the eastbound traffic on College changed from red to green, and that it was green when he entered the intersection and stayed green. He further testified that he first saw the gold Omega driven by Sandra Reagan when he was

approximately 15 to 20 feet from the intersection, that at that point she pulled out in front of him, and when she did, he hit his brakes, blew his horn, and turned his truck to the left to try to avoid the collision.

Eulala Loehr testified that as she approached the intersection she saw the traffic light facing the westbound traffic on College go from green to amber to red immediately before the accident occurred, and on cross-examination, it was shown that she had previously stated in her answers to interrogatories that she was westbound on College approaching the intersection at Major Drive and was bringing her car to a stop in obedience to a red traffic signal. On her deposition, she testified that she had a red light and was coming to a stop. Kenneth Loehr testified that he did not know what color the traffic lights were for either Reagan or Jordan.

Brent Barnes testified that the light in the westbound left-hand turn lane was red, but he did not know what color the light was for the westbound traffic on College and further testified that he had no idea from where he was what color the light was for the gold Omega Oldsmobile which was driven by the deceased Reagan.

Mark Jordan's trial testimony was conflicting with his pre-trial deposition testimony, as to the color of the light when he first saw it. Mark Jordan testified that he never saw the Reagan vehicle until he was right up on the intersection and that the first time he saw the Reagan vehicle it was entering the intersection. Further, he admitted that there was nothing at the intersection to obstruct his view of the Reagan vehicle. He testified he had no idea as to how long it would take him to stop his truck. Brent Barnes testified that he heard no brakes nor tires screaching. A careful review of the entire record shows no evidence of any skid marks.

A key witness was Tom Warner, acting Traffic Engineer for the City of Beaumont, who was familiar with the sequence of the traffic controls for the traffic lights. In response to a hypothetical question, the witness, Tom Warner, testified that the

light would be red for both eastbound and westbound traffic under the conditions presented in the hypothetical; but under the circumstances, the eastbound light would not have turned from red to green about 5 seconds before the collision. Further testimony elicited from the witness, Tom Warner, was that the only way Jordan could have had a green light with both Barnes and Loehr having red lights was for a vehicle to be in the eastbound College left-turn lane and no vehicle traveling north or south on Major prior to the College eastbound left-turn light being activated. Mark Jordan testified that there were no cars stopped in the College eastbound left-turn lane as he passed.

Appellants' first point of error is that the evidence was insufficient to support the jury's answers to special issue no. 1 that Mark D. Jordan entered the intersection when the signal facing him was red, that he failed to keep a proper lookout, and that he failed to make a proper application of his brakes. Since this is an insufficiency of evidence point, it is our duty to consider and weigh all of the evidence in the record to determine if it supports the judgment. *Burnett v. Motyka*, 610 S.W.2d 735 (Tex. 1980); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *American Oil Co. v. Fisher*, 659 S.W.2d 80 (Tex.App.—Houston [14th Dist.] 1983, no writ).

The appellant contends that the circumstantial evidence raised only a mere surmise or suspicion that Mark Jordan entered the intersection when the traffic light facing him was red, and accordingly, said evidence was insufficient to support the jury's answer. *See Bledsoe v. Yarborough*, 422 S.W.2d 222, 227 (Tex.Civ.App.—Tyler 1967, no writ).

■ Appellant further contends that because of the jury's answer to the red light negligence issue, they also found that appellant failed to keep a proper lookout and failed to make a proper application of his brakes. We disagree that the jury's answers to these negligence issues were dependent. The jury could well find a failure to keep a proper lookout and a failure to

make a proper application of his brakes, without finding that he failed to stop for a red light.

■ We must sustain the finding of the trier of the facts if there is some evidence of probative force to support them and they are not against the great weight and preponderance of the evidence. *State v. Zaruba*, 418 S.W.2d 499 (Tex.1967). Nor can we substitute our conclusions for that of the jury on conflicts in the evidence or pass upon the weight or credibility of the testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951). Granted, the evidence was conflicting, but after a careful review of the entire record, we find that there was sufficient evidence to support the jury's findings. Appellants' first point of error is overruled.

Appellants' second point of error is that the trial court erred in excluding evidence of a settlement agreement entered into between the Loehr appellees and James Reagan, as Administrator of the Estate of Sandra E. Reagan, Deceased. The Loehr appellees instituted their claim for injuries and damages by filing suit against the Jordan appellants on January 14, 1981. On May 21, 1981, the deposition of Mark Jordan was taken and thereafter, the appellees Loehr amended their pleadings to bring in the Reagan Estate. On November 10, 1982, the appellees Loehr and the Reagan Estate settled their differences. The settlement papers were filed among the papers of the instant case on November 16, 1982. Counsel for the appellants was aware of the settlement prior to trial and made no request for production of the settlement agreement until January 25, 1983, the first day of trial. The agreement was furnished to appellants' counsel the following day. The trial court refused to allow appellants to introduce the settlement agreement. The agreement which, in addition to providing for a general release, also provided that the Loehr appellees would indemnify and hold harmless the Reagan Estate from any liability with regard to any cross-action or counterclaim filed by the appellants. Reagan individually re-

mained as a party plaintiff and was awarded damages by the jury.

■ The general rule is that evidence of settlement agreements are inadmissible, *McGuire v. Commercial Union Insurance Co.*, 431 S.W.2d 347 (Tex.1968), except in the case of "Mary Carter" agreements when the settling defendant acquires a direct financial interest in the plaintiffs' lawsuit. *General Motors Corp. v. Simmons*, 558 S.W.2d 855 (Tex.1977).

■ Unlike *City of Houston v. Sam P. Wallace and Co.*, 585 S.W.2d 669 (Tex. 1979), where our supreme court held that it was not a fair adversary proceeding because the secret settlement had been made, there was a change in the alignment as to the parties, the settling defendants' counsel remained in the case and argued to the jury contrary to his position at the time of and during the trial, no such circumstances are present in this case. The settlement agreement was not a "Mary Carter" agreement and we find no error in the court's action in excluding evidence of the settlement. *Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648 (Tex.1977).[1] *Clayton v. Volkswagenwerk A.G.*, 606 S.W.2d 15 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Appellant's second point of error is overruled.

Appellant's third point of error is that the trial court erred in admitting into evidence the testimony of James H. Reagan and Tammy Karen Shields concerning transactions each had with Sandra Reagan, Deceased, in violation of *TEX.REV.CIV. STAT.ANN. art. 3716*, the "Dead Man's Statute".[2]

■ Tammy Karen Shields and James H. Reagan (daughter and husband of the deceased Sandra Reagan) proceeded to trial only on claims under the Texas Wrongful Death Statute, *TEX.REV.CIV.STAT.ANN. art. 4671* (Vernon Pamph.Supp.1941–1983). Their causes of action were in their own,

not an inherited right. Thus, the trial court was correct in admitting the evidence concerning the relationship between mother and husband and mother and daughter. *Canales v. Bank of California*, 316 S.W.2d 314 (Tex.Civ.App.—Eastland 1958, writ ref'd n.r.e.); *Airline Motor Coaches, Inc. v. Curry*, 191 S.W.2d 98 (Tex.Civ.App.— 1945, writ ref'd w.o.m.); *Humble Oil & Refining Co. v. Ooley*, 46 S.W.2d 1038 (Tex.Civ.App.—Eastland 1932, writ dism'd). Nor do we agree, as appellants contend, that appellee Reagan's testimony about the contents of the trunk or that of the daughter stating she expected her mother to pick her up at school were transactions with or statements by the deceased. Appellants' third point of error is overruled.

■ Appellants' fourth and final point of error is that the trial court erred in refusing appellants' requested instruction on "sudden emergency". This court in *Deviney v. McLendon*, 496 S.W.2d 161 (Tex.Civ. App.—Beaumont 1973, writ ref'd n.r.e.) repeated what had been judicially established:

> For one to be afforded the sudden emergency theory of relief of negligent action, the condition or circumstances relied upon must arise suddenly and unexpectedly, must call for action leaving no time for deliberation, and must not be brought about or proximately caused by the negligence of the party seeking to avail himself of the doctrine. *Dallas Ry. & Terminal Co. v. Young*, 155 S.W.2d 414 (Tex.Civ.App., refused); *Goolsbee v. Texas & N.O.R. Co.*, 150 Tex. 528, 243 S.W.2d 386.

*See Crowley v. Babolcsay*, 611 S.W.2d 492 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.) (sudden stopping of a third party's automobile; *Harris v. Coward*, 573 S.W.2d 875 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.) (wet and slippery roads); *Salazar v. Hill*, 551 S.W.2d 518 (Tex.Civ.App.—

---

1. In *Miller v. Bock Laundry Machine Co., supra,* the settlement agreement also contained a hold harmless clause from a plea for indemnity or contribution.

2. *Rule 601(b)* of the new Texas Rules of Evidence, superceeding *Art. 3716, supra,* was not in effect at the time of trial.

Corpus Christi 1977, writ ref'd n.r.e.) (wet and slippery streets) as typical examples where "sudden emergency" instructions were given and properly so. But if the evidence only discloses negligent acts of the parties, it is error for the "sudden emergency" instruction to be given. *Deviney v. McLendon, supra.*

The appellant Mark Jordan was found negligent in failing to stop for a red light, failing to apply his brakes, and failing to keep a proper lookout. We find no evidence to excuse appellant Mark Jordan's acts of negligence and thus no evidence which raise the issue of "sudden emergency". The trial court was correct in refusing the requested instruction and appellants' fourth point of error is overruled.

Finding no error, the judgment of the trial court, is accordingly,

AFFIRMED.